UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

LEE CLANCY FORD as Mother and
Next Friend of Jane Doe, a Minor,

    Plaintiff,
vs.

NCL (Bahamas) Ltd., A Bermuda Company,
d/b/a Norwegian Cruise Lines

    Defendant
_____/

## COMPLAINT

**COMES NOW**, the Plaintiff, LEE CLANCY FORD as Mother and Next Friend of JANE DOE, a Minor, by and through undersigned counsel, and sues the Defendant, NCL (Bahamas) Ltd., A Bermuda Company, d/b/a Norwegian Cruise Lines ("NCL"), and further states as follows:

## GENERAL ALLEGATIONS

1. This is a cause of action which is brought in the District Court for the Southern District, Florida pursuant to 28 U.S.C. 1332 and the forum selection clause of Plaintiff's passenger cruise ticket with Defendant.   The cause of action is in excess of $75,000.00.   There is diversity of citizenship.   Plaintiff is a resident and citizen of the country of Canada. This is a maritime cause of action.

2. Plaintiff has complied with all conditions precedent.

3. Defendant is a foreign corporation which is licensed to do business in Florida as a cruise line.   Defendant's base of operations is in Miami, Dade County, Florida.

4. At all times material, Defendant maintained a medical center aboard NORWEGIAN GETAWAY and stocked it with medicines.

5. At all times material, Defendant had the ability to contemporaneously communicate with medical doctors and specialists not on board to discuss and consult with said land-based physicians about the care and treatment of passengers on board ship who may require the services of a ship board physician.

6. At all times material, Defendant was a member of the Cruise Line Industry Association (CLIA). CLIA represents to the American public that its members aspire to the standards of care of the American College of Emergency Physicians (ACEP) in the operation of medical centers on cruise ships.

7. At all times material, Julio Andres Gaona Villamil M.D. was a medical doctor employed by Defendant NCL as a ship's physician for NOREGIAN GETAWAY and was, at all times material, acting within the course and scope of his employment with NCL.

11. At all times material, Cheryl Diane Mendoza was a medical nurse employed by Defendant NCL and was at all times material hereto acting within the course and scope of her employment with NCL.

**COUNT I-NEGLIGENT MEDICAL CARE AND TREATMENT**

12. Plaintiff re-avers and re-alleges Paragraphs 1-11 as if set forth herein.

13. On or about December 19, 2016, the minor Plaintiff presented to the medical center on board with a minor infection in her foot.

14. The minor Plaintiff is a world class champion swimmer in Canada. This fact was made known to Defendant before Defendant prescribed treatment.

15. Due to the fact that the minor Plaintiff is an accomplished athlete and a child, Defendant should have taken that into account when prescribing treatment and

avoided medication that carried with it serious potential side effects that could affect the minor Plaintiff's athletic abilities.

16. Despite the foregoing, Defendant's medical staff prescribed and administered Levofloxacin, which is an antibiotic in a class of drugs known as flouroquinolones.

17. This drug carries a "Black Box" warning from the Food and Drug Administration since July of 2016:

"An FDA safety review has shown that fluoroquinolones when used systemically (i.e. tablets, capsules, and injectable) are associated with disabling and potentially permanent serious side effects that can occur together. These side effects can involve the tendons, muscles, joints, nerves, and central nervous system."

18. The minor Plaintiff was treated with Levofloxacin by Defendant and suffered serious side effects affecting her central and peripheral nervous system, joints, tissues and tendons which has seriously diminished her athletic ability and caused her severe and debilitating pain and limitation and diminishment of her prior abilities as a world-class swimmer.

19. The drug was prescribed inappropriately for the minor Plaintiff because she is a child and an athlete and because her condition of a minor infection did not warrant treatment with a drug that has such known and potentially serious side effects.

20. In addition to the warning as alleged in paragraph 17, there are other warnings in the medical literature that existed before the subject cruise that advise against prescribing this drug to individuals under eighteen years of age as Levofloxacin may cause problems to a minor's bones, joints and surrounding tissues. The minor

Plaintiff was thirteen at the time of the subject cruise.

21. There was no informed consent obtained by the child's mother who was present before, during and after the treatment complained of. Defendant did not disclose either of the foregoing warnings and advisories. Had the Defendant's medical staff advised the Plaintiff of the potential side effects, the Plaintiff would not have given her consent to have her athlete child undergo treatment with this very potent antibiotic with very serious potentially side effects.

22. The minor Plaintiff was caused to suffer and will continue in the future to suffer unnecessary pain due to the failures of Defendant's medical employees and staff to make the correct diagnoses and institute the appropriate medical treatment.

23. Defendant's medical care and treatment of Plaintiff fell below the standard of care in failing to live up to the aspirations and public policy statements of the Cruise Line Industry Association regarding ACEP.

24. Defendant owed Plaintiff a duty of reasonable care in the circumstances in the provision of medical care and treatment to Plaintiff on December 19, 2016. This duty included providing appropriate care and treatment and making proper diagnoses.

25. Notwithstanding Defendant's duty as aforesaid, Defendant, through the actions of its employees and agents, breached same in the following particulars:

a) in failing to properly asses Plaintiff's condition;

b) in failing to obtain informed consent;

c) in failing to prescribe a proper, safe medication for a child;

d) in failing to render appropriate treatment to a child and an accomplished athlete;

      e) in deviating from the standard of care for patients like Plaintiff who is a minor and an accomplished athlete;

      f) in prescribing a drug with known serious and damaging side effects to a child;

      g) in administering the drug by injection which potentiated the effects;

26. At all times material, Plaintiff acted with due care for her own safety.

27. After the minor Plaintiff finished the seven day course of Levofloxacin prescribed by the ship doctor, she began to experience numbness and tingling in her extremities and joint pain in her shoulders, elbows, wrists and knuckles.   She then experiences digestive problems, chest pain, a racing heart, frequent headaches, muscle weakness, cold extremities, sensitivity to light and extreme fatigue.

28. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities, suffered damage to her tendons, ligaments central and peripheral nervous systems and joints and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap, and a loss of the ability to enjoy life; and an aggravation of known and/or unknown physical conditions; Said personal injuries are continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendant for damages and costs and pre-judgment interest.   Jury trial is demanded.

## COUNT II-NEGLIGENCE BASED ON APPARENT AGENCY

29. Plaintiff alleges and avers paragraphs 1-11 and 16-18 and 25 as if set forth herein.

30. At all times material, Defendant NCL held out its medical staff, including its doctors and nurses, as being its employees who work in its "medical center" on

the vessel.

31. The Defendant NCL promotes its medical staff and represents them as being their employees through brochures, internet advertising and on the vessel.

32. The Defendant held out its staff including the nurses and doctors referred to in paragraphs ten through twelve as being direct employees or actual agents.

33. Defendant promotes the idea that the medical staff who work in its "medical center" are employed by the cruise line as a marketing tool to induce passengers such as Plaintiff herein to buy cruises on its ships, particularly since the cruise line sails to various ports in Third World countries that do not have the proper and adequate medical care that Americans have come to expect.

34. The Defendant manifested to the Plaintiff in this case that its medical staff as alleged in paragraphs 16-18 were acting as its employees and actual agents in various ways, including but not limited to:

a) the doctors and nurses worked in what Defendant refers to as its "medical center";

b) the medical center is owned and operated by Defendant, which pays to stock the medical center with medicines, supplies and equipment;

c) the passenger is billed directly by Defendant NCL through the passengers' on board credit account with the cruise line for all medical services rendered at the onboard medical center, whereas the medical staff of doctors and nurses are paid salaries directly by NCL pursuant to contracts of employment;

d) the medical staff are given ship uniforms to wear which include name tags with the NCL cruise line logo.   Said uniforms are required by NCL to be worn

by the doctors and nurses;

e) the doctors are considered to be officers on board, are members of the crew and are introduced to passengers as ship's officers;

f) the ship's doctors and nurses are held out to passengers and Plaintiff herein as being members of the ship's crew;

g) the Defendant placed the medical staff under the command of the ship's superior officers including the Staff Captain, second only in overall authority to the ship's master;

h) the Defendant represents to immigration authorities that the medical staff of doctors and nurses are in fact members of the ship's crew;

i) the ship's doctors and nurses are permitted to eat with the ship's crew whereas passengers are not permitted to do so;

j) the ship's physicians and nurses provide medical services to the ship's medical center and the Plaintiff was required to go to the medical center for treatment;

k) that on the day the Plaintiff slipped and fell and was injured, she was seen in the medical center by a ship's nurse but was later seen by the two doctors on board;

35. Based on the foregoing, the Plaintiff reasonably believed that the ship's nurse and doctors were acting as direct employees or actual agents on behalf of Defendant a and was never given any reason to believe otherwise.

36. The Plaintiff relied to her detriment on her belief that the doctors and nurses were acting as direct employees or actual agents of the Defendant in that Plaintiff followed the advice of the medical staff and did not seek further evaluation or treatment while she was on board ship which was not recommended by the ship's

doctors or nurses.

37. As a result of the Plaintiff's reliance on the ship's medical staff, the Plaintiff's was and has been subjected to unnecessary pain and suffering and causing complications and unnecessary treatment and procedures as a direct and proximate result thereof.

38. The Defendant is liable to the Plaintiff for any and all damages as a result of the negligent medical care by the ship's nurses and physicians under the theory of apparent agency.

39. As a result of the negligence of the Defendant as aforesaid, the Plaintiff was injured in and about her body and extremities, suffered damage to her tendons, ligaments central and peripheral nervous systems and joints and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap, and a loss of the ability to enjoy life; and an aggravation of known and/or unknown physical conditions; Said personal injuries are continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendant for damages and costs and pre-judgment interest.   Jury trial is demanded.

Dated this 5TH   day of December, 2017.

> HOFFMAN LAW FIRM
> PAUL M. HOFFMAN, P.A.
> 2881 East Oakland Park Boulevard
> Fort Lauderdale, FL 33306
> Telephone: (954) 707-5040
>
> By: *//s// Paul M. Hoffman*
> PAUL M. HOFFMAN, ESQ.
> Florida Bar No: 0279897