EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  17-CV-24404-MORENO/TURNOFF

LEE CLANCY FORD as Mother and
Next Friend of Jane Doe, a Minor,

      Plaintiff,

vs.

NCL (BAHAMAS) LTD., a Bermuda
Company d/b/a NORWEGIAN CRUISE
LINES,

_____/

## DEFENDANT'S RESPONSES TO PLAINTIFF'S INITIAL REQUEST FOR PRODUCTION DATED APRIL 9, 2018

      Defendant, NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINES ("Norwegian"), by and through undersigned counsel, hereby serves Responses to Plaintiff's Initial Request for Production, dated April 9, 2018.

      1)      Any and all contracts, addenda and documents referenced therein by and between Defendant and the medical staff including but not limited to Dr. Julio Andres Gaona Villamil and nurse Cheryl Diane Mendoza.

**RESPONSE:**

**See attached contracts for Dr. Villamil and nurse Mendoza at the time of the alleged incident.  A search for additional responsive documents has been requested and will be produced, to the extent they exist, upon receipt.**

**As to any contracts, addenda and documents referenced therein by and between Defendant and the medical staff from prior to or after the time of the alleged incident, Norwegian objects to this request as overbroad, not limited in time or scope, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1).**

CASE NO.:  17-CV-24404-MORENO/TURNOFF

2)      Any and all contracts and addenda thereto and any and all documents referenced in said contracts and addenda thereto which pertain to the purchase by Defendant of the drug Levofloxacin and any fluoroquinolone for the three year period December 29, 2016-December 29, 2013 for use on NORWEGIAN GETAWAY and any ship in Defendant's fleet.

**RESPONSE:**

**Norwegian objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1). This request is only relevant to the issue of notice and is excessive in scope. Discovery into prior incidents must be adequately linked and tailored to a particular hazard, location, or condition. *Ree v. Royal Caribbean Cruises Ltd.,* 2016 WL 1576350, at \*4 (S.D. Fla. Feb. 25, 2016). Plaintiff's request is overbroad and excessive in scope as it and would encompass incidents that involve entirely different facts and scenarios than the case at bar.  Plaintiff claims to have suffered from a side effect of Levaquin related to the treatment of chronic cellulitis. *See Ree*, 2016 WL 1576350, at \*2 ("To satisfy the substantial similarity doctrine a past incident must be reasonably related in terms of location *and* condition."); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (affirming exclusion of past incidents where "none of them occurred where [plaintiff] fell[,]" "the liquids that the other passengers slipped on differed[,]" and "in some of the other incidents there were other factors involved.").**

3)      Copies of any and all warnings issued to Plaintiff about Levofloxacin before it was prescribed to the minor Plaintiff.

**RESPONSE:**

**None.**

4)      A copy of any incident or accident reports prepared by Defendant in regard to the Plaintiff in this case.

**RESPONSE:**

**Norwegian objects to this Request as encompassing documents and records which are protected from disclosure by the attorney-client and work product privileges. The Request impermissibly seeks documents and records which were created in anticipation of litigation, and are protected from production. *See Finnegan v. Carnival Corp.,* 2009 WL 2852671, 3 (S.D. Fla. 2009); *Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650 (S.D. Fla. 2009); *Eisenberg v. Carnival Corp.,* No. 07-22058-CIV, 2008 WL 2946029 (S.D. Fla. July 7, 2008); *Royal Caribbean Cruises, Ltd. v. Doe,* 964 So.2d 713, 718 (Fla. 3d DCA 2007); *Alexander v. Carnival Corp.,* 238 F.R.D. 318 (S.D. Fla. 2006); *Hines v. Widnall,* 183 F.R.D. 596 (N.D. Fla. 1998); *Southern Bell & Tel. Co. v. Deason,* 632 So. 2d 1377 (Fla. 1994); *Nadler v. U.S. Dept. of Justice,* 955 F.2d 1479 (11th Cir. 1992); *Hickman v. Taylor,* 329 U.S. 495 (1947). It is well decided**

that requests for accident/incident reports are objectionable as the primary motivating purpose and function of such documents is to aid in future litigation and assist defense counsel in litigation. *Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650, 656 (S.D. Fla. 2009) (citing *Hickman v. Carnival Corp.,* 04–20044–CIV–UNGARO (S.D. Fla. Aug. 16, 2004 DE #34) (holding cruise line accident report prepared on the advice of counsel to provide claims handling information in anticipation of litigation); *Iaquinto v. Carnival Corp.,* Case No. 05–21652–CIV–JORDAN (S.D. Fla. Nov. 18, 2005, DE # 18) (finding cruise line had shown that the incident report, witness statements and photographs of the subject deck were prepared in anticipation of litigation); *see also Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 06-21817-CIV, 2007 WL 1059561, at *2 (S.D. Fla. Apr. 4, 2007) (citing *Guidry v. Jen Marine LLC,* No. Civ. A. 03-0018, 2003 WL 22038377, *2 (E.D.La. Aug. 22, 2003); *see also Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.,* No. 6:02-CV-126-ORL-KRS, 2003 WL 21146674, *14 (M.D. Fla. Feb. 4, 2003) ("The testing question for the work-product privilege, ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.").

Subject to and without waiving any objections, none.

5)     All medical records and reports pertaining to Plaintiff, including all ship board medicals.

RESPONSE:

See attached. Any medical records subpoenaed by Norwegian will be produced upon receipt.

Otherwise, objection. Norwegian objects to this Request as encompassing documents and records which are protected from disclosure by the attorney-client and work product privileges. Plaintiff has not defined, explained, or limited what is meant or encompassed by the term "reports." The Request impermissibly seeks documents and records which were created in anticipation of litigation, and are protected from production. *See Finnegan v. Carnival Corp.,* 2009 WL 2852671, 3 (S.D. Fla. 2009)*; Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650 (S.D. Fla. 2009); *Eisenberg v. Carnival Corp.,* No. 07-22058-CIV, 2008 WL 2946029 (S.D. Fla. July 7, 2008); *Royal Caribbean Cruises, Ltd. v. Doe,* 964 So.2d 713, 718 (Fla. 3d DCA 2007); *Alexander v. Carnival Corp.,* 238 F.R.D. 318 (S.D. Fla. 2006); *Hines v. Widnall, 183 F.R.D. 596 (N.D. Fla. 1998); Southern Bell & Tel. Co. v. Deason,* 632 So. 2d 1377 (Fla. 1994); *Nadler v. U.S. Dept. of Justice,* 955 F.2d 1479 (11th Cir. 1992); *Hickman v. Taylor,* 329 U.S. 495 (1947). It is well decided that requests for accident/incident reports are objectionable as the primary motivating purpose and function of such documents is to aid in future litigation and assist defense counsel in litigation. *Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650, 656 (S.D. Fla. 2009) (citing *Hickman v. Carnival Corp.,* 04–20044–CIV–UNGARO (S.D. Fla. Aug. 16, 2004 DE

**#34) (holding cruise line accident report prepared on the advice of counsel to provide claims handling information in anticipation of litigation);** *Iaquinto v. Carnival Corp.,* **Case No. 05–21652–CIV–JORDAN (S.D. Fla. Nov. 18, 2005, DE # 18) (finding cruise line had shown that the incident report, witness statements and photographs of the subject deck were prepared in anticipation of litigation);** *see also Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of Am.***, No. 06-21817-CIV, 2007 WL 1059561, at \*2 (S.D. Fla. Apr. 4, 2007) (citing** *Guidry v. Jen Marine LLC,* **No. Civ. A. 03-0018, 2003 WL 22038377, \*2 (E.D.La. Aug. 22, 2003);** *see also Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.,* **No. 6:02-CV-126-ORL-KRS, 2003 WL 21146674, \*14 (M.D. Fla. Feb. 4, 2003) ("The testing question for the work-product privilege, ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.").**

**Further, the above request is so vague and overbroad that it has rendered providing a privilege log of potential documents to the Plaintiff impossible at this time.**

6)      Any and all statements made by Plaintiff including passenger injury statements.

**RESPONSE:**

**None other than statements contained in Plaintiff's medical records. Discovery is ongoing.**

7)      Resumes for all ship medical personnel on NORWEGIAN GETAWAY who were on board GETAWAY on December 29, 2016.

**RESPONSE:**

**See attached.  A search for additional responsive documents has been requested and will be produced, to the extent they exist, upon receipt.**

8)      Any and all non-privileged statements made by any person regarding Plaintiff.

**RESPONSE:**

**None other than statements contained in Plaintiff's medical records. Discovery is ongoing.**

9)      Copies of all written warnings in Defendant's possession, custody or control regarding Levofloxacin and any fluoroquinolone as of December 29, 2016.

**RESPONSE:**

**None.**

10)      A list of names, last known addresses and telephone numbers of all persons with knowledge of Plaintiff's medical treatment aboard the Defendant's vessel including doctors and nurses.

**RESPONSE:**

**See Norwegian's response to Plaintiff's Interrogatory No. 5.**

11)      All records concerning the prescribing of Levofloxacin and any fluoroquinolone for any ship in Defendant's fleet for the three year period December 29, 2013-December 29, 2016.

**RESPONSE:**

**Norwegian objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1). This request is only relevant to the issue of notice and is excessive in scope. Discovery into prior incidents must be adequately linked and tailored to a particular hazard, location, or condition. *Ree v. Royal Caribbean Cruises Ltd.,* 2016 WL 1576350, at \*4 (S.D. Fla. Feb. 25, 2016). Plaintiff's request is overbroad and excessive in scope as it and would encompass incidents that involve entirely different facts and scenarios than the case at bar.   Plaintiff claims to have suffered from a side effect of Levaquin related to the treatment of chronic cellulitis. *See Ree*, 2016 WL 1576350, at \*2 ("To satisfy the substantial similarity doctrine a past incident must be reasonably related in terms of location *and* condition."); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (affirming exclusion of past incidents where "none of them occurred where [plaintiff] fell[,]" "the liquids that the other passengers slipped on differed[,]" and "in some of the other incidents there were other factors involved.").**

12)      All non-privileged statements regarding Plaintiff.   If privilege is claimed, please identify specifically for what documents the privilege is claimed.

**RESPONSE:**

**None other than statements contained in Plaintiff's medical records. Discovery is ongoing.**

CASE NO.:  17-CV-24404-MORENO/TURNOFF

13)     All prior incident reports which mention a similar causative condition as alleged in the lawsuit (adverse reaction from prescribing Levofloxacin and any fluoroquinolone for a) the NORWEGIAN GETAWAY and b) all ships in the defendant's fleet for the three year period 12/29/16-12/29/13.

**RESPONSE:**

**Norwegian objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1). This request is only relevant to the issue of notice and is excessive in scope. Discovery into prior incidents must be adequately linked and tailored to a particular hazard, location, or condition.** *Ree v. Royal Caribbean Cruises Ltd.,* **2016 WL 1576350, at *4 (S.D. Fla. Feb. 25, 2016). Plaintiff's request is overbroad and excessive in scope as it and would encompass incidents that involve entirely different facts and scenarios than the case at bar.  Plaintiff claims to have suffered from a side effect of Levaquin related to the treatment of chronic cellulitis.** *See Ree***, 2016 WL 1576350, at *2 ("To satisfy the substantial similarity doctrine a past incident must be reasonably related in terms of location *and* condition.");** *Sorrels v. NCL (Bahamas) Ltd.***, 796 F.3d 1275, 1287 (11th Cir. 2015) (affirming exclusion of past incidents where "none of them occurred where [plaintiff] fell[,]" "the liquids that the other passengers slipped on differed[,]" and "in some of the other incidents there were other factors involved.").**

**Subject to and without waiving any objections, none.**

14)     Plaintiff's Passenger Injury Statement.

**RESPONSE:**

**None.**

15)     Copies of all correspondence received by Defendant from any person or entity which mentions the Plaintiff or the incident(s) as alleged in Plaintiff's lawsuit.  If a privilege is claimed, please file a privilege log.

**RESPONSE:**

**Norwegian objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1). This request is only relevant to the issue of notice and is excessive in scope. Discovery into prior incidents must be adequately linked and tailored to a particular hazard, location, or condition.** *Ree v. Royal Caribbean Cruises Ltd.,* **2016 WL 1576350, at *4 (S.D. Fla. Feb. 25, 2016). Plaintiff's request is overbroad and excessive in scope as it and would encompass incidents that involve entirely different facts and scenarios than the case at bar.  Plaintiff claims to have suffered from a side effect of Levaquin related to the treatment of**

CASE NO.:  17-CV-24404-MORENO/TURNOFF

chronic cellulitis. *See Ree*, 2016 WL 1576350, at \*2 ("To satisfy the substantial similarity doctrine a past incident must be reasonably related in terms of location *and* condition."); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (affirming exclusion of past incidents where "none of them occurred where [plaintiff] fell[,]" "the liquids that the other passengers slipped on differed[,]" and "in some of the other incidents there were other factors involved.").

Further, the above request is so vague and overbroad that it has rendered providing a privilege log of potential documents to the Plaintiff impossible at this time.

16)     Copies of all correspondence sent by Defendant to any person or entity which mentions or pertains to the incident(s) as alleged in Plaintiff's lawsuit.  If a privilege log is claimed, please file a privilege log.   Please include reports to the U.S. Coast Guard in this response.

**RESPONSE:**

Norwegian objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1). This request is only relevant to the issue of notice and is excessive in scope. Discovery into prior incidents must be adequately linked and tailored to a particular hazard, location, or condition. *Ree v. Royal Caribbean Cruises Ltd.*, 2016 WL 1576350, at \*4 (S.D. Fla. Feb. 25, 2016). Plaintiff's request is overbroad and excessive in scope as it and would encompass incidents that involve entirely different facts and scenarios than the case at bar.  Plaintiff claims to have suffered from a side effect of Levaquin related to the treatment of chronic cellulitis. *See Ree*, 2016 WL 1576350, at \*2 ("To satisfy the substantial similarity doctrine a past incident must be reasonably related in terms of location *and* condition."); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (affirming exclusion of past incidents where "none of them occurred where [plaintiff] fell[,]" "the liquids that the other passengers slipped on differed[,]" and "in some of the other incidents there were other factors involved.").

Further, the above request is so vague and overbroad that it has rendered providing a privilege log of potential documents to the Plaintiff impossible at this time.

17)     Copies of pages plus the index of any SQM (Safety Quality Manual) or SMS (Safety Management System) which pertain to any allegation made in Plaintiff's lawsuit regarding a) prescribing Levofloxacin and any fluoroquinolone to a passenger or crew member and b) warning passengers and crew members of the potential side effects of Levofloxacin and any fluoroquinolone in effect in 2016.

**RESPONSE:**

**None.**

CASE NO.:  17-CV-24404-MORENO/TURNOFF

18)     Copies of any and all witness statements which pertain to or discuss any allegation in Plaintiff's complaint.  If a privilege is asserted, please file a privilege log.

**RESPONSE:**

**Norwegian objects to this Request as encompassing documents and records which are protected from disclosure by the attorney-client and work product privileges. The Request impermissibly seeks documents and records which were created in anticipation of litigation, and are protected from production.** *See Finnegan v. Carnival Corp.,* **2009 WL 2852671, 3 (S.D. Fla. 2009);** *Fojtasek v. NCL (Bahamas) Ltd.,* **262 F.R.D. 650 (S.D. Fla. 2009);** *Eisenberg v. Carnival Corp.,* **No. 07-22058-CIV, 2008 WL 2946029 (S.D. Fla. July 7, 2008);** *Royal Caribbean Cruises, Ltd. v. Doe,* **964 So.2d 713, 718 (Fla. 3d DCA 2007);** *Alexander v. Carnival Corp.,* **238 F.R.D. 318 (S.D. Fla. 2006);** *Hines v. Widnall,* **183 F.R.D. 596 (N.D. Fla. 1998);** *Southern Bell & Tel. Co. v. Deason,* **632 So. 2d 1377 (Fla. 1994);** *Nadler v. U.S. Dept. of Justice,* **955 F.2d 1479 (11th Cir. 1992);** *Hickman v. Taylor,* **329 U.S. 495 (1947). It is well decided that requests for accident/incident reports are objectionable as the primary motivating purpose and function of such documents is to aid in future litigation and assist defense counsel in litigation.** *Fojtasek v. NCL (Bahamas) Ltd.,* **262 F.R.D. 650, 656 (S.D. Fla. 2009) (citing** *Hickman v. Carnival Corp.,* **04–20044–CIV–UNGARO (S.D. Fla. Aug. 16, 2004 DE #34) (holding cruise line accident report prepared on the advice of counsel to provide claims handling information in anticipation of litigation);** *Iaquinto v. Carnival Corp.,* **Case No. 05–21652–CIV–JORDAN (S.D. Fla. Nov. 18, 2005, DE # 18) (finding cruise line had shown that the incident report, witness statements and photographs of the subject deck were prepared in anticipation of litigation);** *see also Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of Am.,* **No. 06-21817-CIV, 2007 WL 1059561, at \*2 (S.D. Fla. Apr. 4, 2007) (citing** *Guidry v. Jen Marine LLC,* **No. Civ. A. 03-0018, 2003 WL 22038377, \*2 (E.D.La. Aug. 22, 2003);** *see also Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.,* **No. 6:02-CV-126-ORL-KRS, 2003 WL 21146674, \*14 (M.D. Fla. Feb. 4, 2003) ("The testing question for the work-product privilege, ... is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.").**

**Subject to and without waiving any objections, none.**

19)     Copies of any contracts or written agreements by and between Defendant and any independent contractor involved in delivering medical care to passengers on NORWEGIAN GETAWAY in 2016. If a privilege is claimed, please file a privilege log.

**RESPONSE:**

**Norwegian objects to this Request is overbroad and vague, not sufficiently limited in time or in scope, not proportional to the needs of the case, and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1).**

CASE NO.:  17-CV-24404-MORENO/TURNOFF

20)      Copies of any ship to shore or shore to ship phone calls, emails or faxes which pertain or mention Plaintiff.  If a privilege is claimed, please file a privilege log.

**RESPONSE:**

**None.**

21)      Copies of any written or oral warnings given to Plaintiff regarding any facet of the incident as alleged in the lawsuit which were communicated to Plaintiff prior to the incident of prescribing Levofloxacin to the Plaintiff as alleged in the lawsuit.

**RESPONSE:**

**See Plaintiff's ship medical records.**

22)      The vessel's medical center for inspection.

**RESPONSE:**

**Norwegian objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1).**

23)      The Plaintiff's sign and sail or similar on board charge ledger.

**RESPONSE:**

**See attached.**

24)      Copies of all invoices from independent contractors who provided medical care to Plaintiff in December 2016.

**RESPONSE:**

**None.**

25)      Copies of all purchase orders for Levofloxacin and any fluoroquinolone by Defendant for the three (3) year period preceding the date of injury as alleged in the complaint.

**RESPONSE:**

**Norwegian objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1).**

26)     Copies of all written descriptions of medicines stocked in the infirmary or medical center of NORWEGIAN GETAWAY as of December, 2016.

**RESPONSE:**

**A copy of the ship's formulary as of December, 2016 has been requested and will be produced upon receipt.**

27)     Copies of letters or lawsuits for the three year period preceding 12/19/16 complaining about the medical care received by Dr. Villamil and Nurse Mendoza and any other medical personnel on board NORWEGIAN GETAWAY for the three (3) year period 12/29/16-12/29/13.  If a privilege is claimed, please file privilege log

**RESPONSE:**

**None.**

28)      Expert reports pertaining to prescribing Levofloxacin and any fluoroquinolones which are not privileged.  If a privilege is claimed, please file a privilege log.

**RESPONSE:**

**Norwegian objects to this request as premature and it will produce the reports of any retained experts in accordance with the Court's deadlines and the Federal Rules of Civil Procedure.**

29)     Bridge logs pertaining to this incident.

**RESPONSE:**

**None.**

30)     VDR or video tapes or records pertaining to this incident.

**RESPONSE:**

**None.**

31)     Copies of any and all warnings issued to Plaintiff during her cruise regarding taking Levofloxacin.

**RESPONSE:**

**See Plaintiff's ship medical records.**

CASE NO.:  17-CV-24404-MORENO/TURNOFF

32)     Copies of prior lawsuits filed by third persons against this Defendant alleging a substantially similar occurrence as that alleged in the complaint (prescribing Levofloxacin and any fluoroquinolones and any antibiotic for the three year period December 29, 2013-December 29, 2016 for a) the NORWEGIAN GETAWAY and b) any sister ships in Defendant's fleet.

**RESPONSE:**

**Norwegian objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case and therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1). This request is only relevant to the issue of notice and is excessive in scope. Discovery into prior incidents must be adequately linked and tailored to a particular hazard, location, or condition. *Ree v. Royal Caribbean Cruises Ltd.,* 2016 WL 1576350, at \*4 (S.D. Fla. Feb. 25, 2016). Plaintiff's request is overbroad and excessive in scope as it and would encompass incidents that involve entirely different facts and scenarios than the case at bar.  Plaintiff claims to have suffered from a side effect of Levaquin related to the treatment of chronic cellulitis. *See Ree*, 2016 WL 1576350, at \*2 ("To satisfy the substantial similarity doctrine a past incident must be reasonably related in terms of location *and* condition."); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (affirming exclusion of past incidents where "none of them occurred where [plaintiff] fell[,]" "the liquids that the other passengers slipped on differed[,]" and "in some of the other incidents there were other factors involved.").**

**Subject to and without waiving any objections, none that Norwegian is aware of.**

33)     Copies of ship to shore communications between NORWEGIAN GETAWAY and home office in Miami regarding any allegation in Plaintiff's complaint.

**RESPONSE:**

**None.**

34)     Copies of any and all written guidelines pertaining to the duties of shipboard physicians and nurses in force and effect on December 29, 2016.

**RESPONSE:**

**See attached.**

CASE NO.:  17-CV-24404-MORENO/TURNOFF

35)      Copies of communications by and between any medical personnel aboard NORWEGIAN GETAWAY and home office regarding Plaintiff and prescribing treatment to Plaintiff.  If a privilege is claimed, please file a privilege log.

**RESPONSE:**

**Norwegian objects to this request on the basis that it is overbroad, not limited in time or scope, unduly burdensome, and not proportional to the needs of the case therefore outside the proper scope of discovery under Fed. R. Civ. P. 26(b)(1). Further, the above request is so vague and overbroad that it has rendered providing a privilege log of potential documents to the Plaintiff impossible at this time.**

**To the extent this requests communications on or near December 19, 2016 and without waiving any objections, none.**

36)      Minutes of safety meetings held a) on board the vessel involved in Plaintiff's incident on NORWEGIAN GETAWAY) and b) home office where there was any discussion of prescribing Levofloxacin and any fluoroquinolone for a) NORWEGIAN GETAWAY and b) any other ships in Defendant's fleet for the three year period December 29, 2013-December 29, 2016.

**RESPONSE:**

**None.**

Respectfully submitted,

MASE MEBANE & BRIGGS, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:   (305) 377-0080

By:____/s/ *Laurence M. Krutchik*_____
        THOMAS A. BRIGGS
        Florida Bar No. 663034
        tbriggs@maselaw.com
        rcoakley@maselaw.com
        filing@maselaw.com
        Laurence M. Krutchik
        Florida Bar No.: 0069449
        lkrutchik@maselaw.com
        filing@maselaw.com
        ctoth@maselaw.com

CASE NO.:  17-CV-24404-MORENO/TURNOFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2018, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____/s/ *Laurence M. Krutchik*_____
LAURENCE M. KRUTCHIK

## <u>SERVICE LIST</u>

Paul Hoffman, Esq.
Hoffman Law Firm
2881 East Oakland Park Blvd.
Suite 110
Fort Lauderdale, Florida  33306
Tel:  (954) 707-5040
pmh@paulmhoffmanlaw.com
*Attorneys for Plaintiff*

19305//#132

# RESPONSE TO REQUEST NO. 1

DOCTOR - Officers - 2:1

Payroll Accountant

~~it,~ tl/0

NCL (Bahamas) Ltd. d/b/a Norwegian Cruise Line, ("Company" or "Employer" located at 7665 Corporate Center Drive, Miam., Florida, 33126, USA agrees to employ Gaona Villamil, Julio, ("Seafarer") in the capacity set forth below, for the consideration and under the terms and conditions hereinafter stated, and ·seafarer" agrees to be so employed and to abide by the terms and conditions or this Employment Agreement I' Agreement) and the Collective Bargaining Agreement ("CBA") for Sr. Catering, Deck and Engine Personnel and Key Personnel.

PERSONAL INFORMATION

O New Hire    O Rehire    O Transferring    [b] Returning

| Last Name | First Name | Middle Name |
|---|---|---|
| Gaona Viiamii | Julio | Andres |

| Address |
|---|
| CR 54 #135- 35 !NT 7 APT403 |
| Bogota 63001 Colombia |

| Telephone Number | Personal Email Address |
|---|---|
| 573 I43 852307 | andresmd03@yahoo.com |

| Date of Birth | Place of Birth |
|---|---|
| 04/03/1976 | Bogota - COL |

| Marital Status | Nationality | Sex |
|---|---|---|
| Divorced | COL | Male |

| Height | Weight | Eye Color |
|---|---|---|
| 5-8 | 169 | Green |

| EMERGENCY CONTACT NAME | Emergency Contact Number |
|---|---|
| Julio Martin Gaona | 571 811 5587 |

| Emergency Contact Address |
|---|
| Same as above |

DOCUMENTATION

| Pass ort # | Pass ort Ex . Date | Home Air  rt |
|---|---|---|
| AP601164 | 04/20/2024 | BOG |

| Visa Type | Visa Exp. Date |
|---|---|
| CID | 10/07/2019 |

| ARC #, if applicable | Social Security #, if applicable |
|---|---|
| | |

SIGN ON/OFF INFORMATION

| Position | Department |
|---|---|
| Doctor | Medical |

| To Serve Initially On Board The: |
|---|
| Norwegian Getaway |

| First Hire Date |
|---|
| 05/15/2016 |

| Sign On Port (subject to change) | Sign On Date (subject to change) |
|---|---|
| Miami, Florida | 11-06-2016 |

| Sign Off Port | Scheduled Sign Off Date |
|---|---|
| TBD | 02-05-2017 |

SALARY INFORMATION

| Salary Per Month | Pay Effective Date |
|---|---|
| SDplus commission • | 11-06-2016 |

| Where applicable, formula used for calculating monthly salary: |
|---|
| Seafarer's monthly wage calculation In accordance with said CBA, Annex 1. |

OTHER AGREEMENTS OR SPECIAL CONDITIONS

*6% (SIX) commission on consultations, procedures, laboratory tests and medicines sold to guests, where guest Is charged In lull. No commission will be paid for any medical care of crewmembers, gratis guest accident treatment or outbreak situations. Seafarer will be paid 150% of the monthly basic wages for any portion of a dry dock, or other out-of-service period of the Vessel occurring during the term of this contract, not to exceed 30 days.

1. The Seafarer shall be initially employed on board the above-mentioned ship. The Seafarer expressly acknowledges that he/she has been advised and understands that all rights, obligations and duties of the Employer to the Seafarer are governed by and subject to the CBA and the Employer's written policies concerning drug and alcohol use, sexual harassment, and complaint resolution process. The CBA is collectively bargained for by the Norwegian Seafarer's Union and covers the employment relationship established herein notwithstanding whether the Seafarer is a member of the Norwegian Seafarer's Union and any subsequent Protocol entered Into between Employer and the Norwegian Seafarer's Union. The Seafarer understands that the Norwegian Seafarer's Union bargains for and on behalf of all Seafarers and enters into a collective bargaining agreement or Protocol at regular intervals with the Employer whereby the terms of employment and various benefits are determined. The Seafarer understands and agrees that with respect to the Employer's obligations under general maritime law in the event or Injury or illness the terms or the CBA control and the Seafarer will be provided with benefits, Including unearned wages, maintenance, cure and medical care, board and lodging (If applicable), burial expenses (where applicable) and will be compensated In accordance with said CBA.
2. The Seafarer acknowledges that he/she has had an opportunity to examine and seek advice of said Agreement and CBA before signing on the vessel. The Seafarer understands and agrees that the Sign On Date and Sign On Port are subject to change.
3. The Seafarer understands and agrees that he/she shall be subject to being transferred to any other ship now or hereafter owned, managed or operated by the Company.
4. Notice or termination of the employment relationship hereunder (except ror termination for cause) shall be In accordance with said CBA, Article 3.3.
5. The first three (3) months of the Agreement for new hires shall be considered a probationary period, which entitles Norwegian or Its representative to terminate the Agreement by giving seven (7) days' notice, or seven (7) days' pay In lieu of notice, which shall consist of the Seafarer's Monthly Guaranteed Pay prorated for seven (7) days. (CBA Article 3.1)
6. The Seafarer understands that upon successful completion of his/her assignment onboard, the Employer shall be responsible to repatriate the Seafarer at no cost to the Seafarer.
7. Total wages include compensation for unlimited and irregular working hours and work performance during the contract period onboard the vessel, unless otherwise stated in the CBA.
8. The Company shall give a monthly account of the payments due and the amounts paid, including wages, additional payments and the rate of exchange used where the payment has been made in a currency or at a rate different from the one agreed to.
9. The Company shall provide the Seafarer with a means to transmit all or part or their earnings to their families or dependents or legal beneficiaries. Where applicable, any charges for such transmissions including the currency exchange rates shall be at the market rate or the official published rate.
10. Ranks on board shall be defined In accordance with the rules and regulations of the Company and otherwise as may be required by the Maritime Law of the Bahamas. If the Master Is hindered from the performance of his/her duties, the officer in charge shall have the Master's authority.
11. If the ship on which the Seafarer serves is sold, laid up, or suffers a total or constructive loss, or if a voyage cannot be undertaken or continued because of Acts of God, war, rebellion, insurrection, embargo, blockade, or similar matters, the Company or its agent shall have the option either to terminate this Agreement at once upon payment of wages and severance due, if any, or to transfer the Seafarer to any vessel under the same Management/Operation. Traveling expenses In these cases shall be paid by the Company.
12. No Seafarer shall be allowed to bring on board persons not belonging to the ship's complement or Seafarers without the express prior permission of the Master or the Company. The Seafarer Is subject to random drug and alcohol test. Any violation of the ship's regulations or legal requirements concerning contraband, smuggling or embezzlement may be punished by dismissal without further notice. Other offenses such as willful disobedience to any lawful command, willful breach of duty, Intoxication, scandal, aggression, or leaving the vessel or his duty station without permission may be punished by dismissal with or without notice, In accordance with the Employer's complaint Resolution Process. All expenses for repatriation or the dismissed Seafarer will be for the responsibility of the dismissed Seafarer.
13. The Seafarer certifies that all the Information he provided and disclosed on his Application for Employment and the Seafarer's Medical Certificate Is true and complete m every respect, and further agrees that If the information he provided therein was inaccurate or Incomplete, the Seafarer may not be allowed to join the vessel and/or his employment may be terminated in the Company's discretion and the Seafarer shall be solely responsible for all repatriation expenses.
14. The Seafarer guarantees that no circumstances e'list whirh wntlltt hindPr him/her from obtainno the necessary documents and visas recurred for travel to and rrom the vessel located worldwide.

NCL 19305-15

15. Employee agrees to provide his or her services in the capacity of a Ship's Physican. Employee's services shall also include (a) supervison and management of the vessel's Medical Faclity and Medical Staff; and (b) the performance of a training program for the vessel's crew incuding Basic Medical Induction (CPR, first aid, and the Heimlich maneuver) and any other procedures outlined in detal in the Vessel Operations Manual and the Medical Manual.

16. Prior to the execution of this contract, Employee shall present Company with evidence that Employee has a current, valid license to practice medicine, as a certified Medical Physican and shall further show to have the experience and qualifications necessary to perform the duties required of an onboard physician. Employee hereby certifies and affirms that he/she meets or exceeds the qualification standards outlined in Guideline 2 of Exhibit "A" attached hereto and incorporated herein. Employee further warrants that Employee does not hold nor has ever held a license to practice medicine that has been suspended, revoked, or restricted. Employee agrees to advise Company immediately should any of Employee's licenses to practice medicine become suspended, revoked, restricted or subject to or under investigation.

17. Employee agrees to practice according to the appropriate standard of care, to practice within his or her scope of medical expertise and in the best interests of his or her patient. No member of the Vessel's crew or anyone employed by Company shall have the authority to supersede the medical decisions of Employee.

18. Employee agrees not to disclose any patient information to any third parties unless required to do so by subpoena or court order.

19. If the Seafarer is dismissed for cause, the Seafarer shall pay all expenses arising out of his/her discharge.

20. Benefits: Seafarer shall be entitled to participate in such health and accident, medical, disability, life insurance, pension and bonus plans as Employer now has or shall hereafter implement during the term of this Agreement to the extent permitted by such plans or programs in accordance with the provisions and terms outlined by Employer.

21. In the event that any part of this Agreement is found to be enforceable, or nul and void, such findings shall not affect any other parts of this Agreement not expressly found to be unenforceable. All parts of this Agreement not specificaly found to be enforceable shall remain in full force and effect.

22. Norwegian shall consider a special request of early termination of the service period on compassionate grounds. If such request for early termination is granted in the case of death or serious illness in the Seafarers immediate family (parent, siblings, spouse, children), repatriation costs will be paid by the Company.

23. The Seafarer shall be provided with a copy of the Onboard Complaint Procedure and Shoreside Complaint Procedure as part of the CBA.

24. The Seafarer hereby expressly waives all physican/patient confidentiality and hereby specifically authorizes any physician, hosptal, physical therapist, psychologist, psychiatrist and any other health care provider of any nature whatsoever who has provided care to the Seafarer to release to any authorized representative of Employer any medical record, chart, note, report, test result, or any other document regarding the care and treatment of the Seafarer. The Seafarer further authorizes any health care provider to discuss his or her care, treatment and prognosis with any authorized representative of Employer.

25. ARBITRATION - The Seafarer agrees, on his own behalf and on behalf of his heirs, executors, and assigns, that any and all clams, grevances, and disputes of any kind whatsoever relating to or in any way connected with the Seafarer's shipboard employment with Company including, but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, un-seaworthiness, wages, or otherwise, no matter how described, pleaded or styled, and whether asserted against Company, Master, Employer, Ship Owner, Vessel or Vessel Operator, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958) ("The Convention"), except as otherwise provided in any government mandated contract, such as the Standard POEA Contract for Seafarers from the Philippines. The arbitration shall be administered by the American Arbitration Association ("AAA") under its International Dispute Resolution Procedures. No dispute may be joined with another lawsuit, or in arbitration with a dispute of any other person, or resolved on a class-wide basis. A single Arbitrator is to be jointly appointed by the NSU and/or the Seafarer, on one side, and Company, on the other side, unless the parties cannot agree to an Arbitrator, in which case the AAA shall select the Arbitrator from among six (6) names, three submitted by the NSU/the Seafarer and three submitted by Company. The language of the arbitration shall be English. The place of the arbitration shall be Miami, Florida, unless the Seafarer has been denied a visa for entry into the United States, in which case the arbitration shall take place in Nassau, Bahamas. In the event Seafarer is unable to obtain a visa for entry in Nassau, Bahamas, then arbitration shall take place in Seafarer's country of citizenship. The substantive law to be applied to the arbitration shall be the Bahamas. Norwegian shall bear the reasonable costs related to the arbitration process from the beginning to end including but not limited to, fees charged and expense incurred by arbitrators and any costs related to the processing necessary to enforce a decison regardless of who represents the Seafarer. Each party shall bear the costs of their own attorneys' fees and legal representation. The parties will exchange all documentation to be relied upon at the final arbitration hearing in accordance with the IDRP Rules of the ICDR. Depostions shall be limited to a maximum of three per party. Additional depositions may be scheduled only with the permission of the arbitrator and for good cause shown. Each deposition shall be limited to a maximum of seven hours duration. The parties are entitled to medical examinations to verify any injuries or damages claimed, or to rebut any defenses. Neither party's attorney, agent nor representative shall be present during Norwegian's examnation. The Company and the Seafarer acknowledge that they voluntarily and knowingly waive any right they have to a jury trial. The arbitration referred to in this Article is exclusive and mandatory. In addition, the NSU, Seafarer, and the Company agree that the Arbitrator shall have exclusive authority to resolve any claims, grievances, and disputes relating to the validity and enforceability of the arbitration provision of this Agreement, as well as any and all disputes relating to the location of the arbitration, applicable choice of law, and the procedures and rules employed during the arbitration. Lawsuits or other proceedings between the Seafarer and the Company may not be brought except to enforce the arbitration provision of this Agreement or to enforce a decison of the Arbitrator. The Seafarer shall continue to satisfactorily and in good faith perform his/her duties and the parties shall abide by this Agreement while disputes or grievances are being resolved.

### Seafarer Acknowledgment

I, the undersigned Seafarer, declare that I have read and understood the terms of this Agreement and that no oral promises or other agreements have been made to me and that I cannot claim and am not entitled to any additional benefits of any kind whatsoever except those provided in this Agreement. I declare that the Applicaton for Employment and Seafarer's Medical Certificate, previously filled out and signed, is true and correct in every respect and that, as part of my Employment Agreement, I agree to abide by the Conditions set forth in the Ship's Article and by such Company rules and regulations that are in effect from time to time.

I, the undersigned, have received and signed copies of the CBA, Drug and Alcohol Policy for Shipboard Personnel, Complaint Resolution Process Policy, and Sexual Harassment Policy for Shipboard Personnel, and agree that I will abide by the terms and conditions contained therein.

Executed this~  dirY of November  2016, at Norwegian Getaway

Seafarer's Signature

For and on behalf of NCL (Bahamas) Ltd. d/b/a Norwegian Cruise Line

Distribution: Signed Original to Seafarer/  1 signed copy: Onboard Personnel File/  1 signed copy: Fleet Personnel Shoreside

Republic of the Philippines
Department of Labor and Employment
PHILIPPINE   OVERSEAS EMPLOYMENT ADMINISTRATIO
CONTRACT OF EMPLOYMENT

**Melissa Stanley**
Payroll Accountant

——  ~

**OCT o 2 2016**

KNOWN ALL MEN BY THESE PRESENTS:

This Contract, entered into voluntarily by and between:

Name of Seafarer:   GALLARDO, CHERYL DIANE MENDOZA

Date of Birth :     29.07.1972          Age: 44          Place of Birth  MANI LA
Address:    SAN JOSE VILLAGE, ROXAS CITY, CAPIZ

SIRB No. :  C0204881                    SRC No. :  0452962-02

License No. :

hereinafter referred to as the Employee, and

Name of Agent:   C.F. SHARP CREW MANAGEMENT, INC.
Address of Agent:    CASA ROCHA 290-292 GENERAL LUNA ST. INTRAMUROS, MANILA.
For and in behalf of                    NORWEGIAN CRUISE LINE, LTD.
                 7665 CORPORATE CENTER DRIVE, MIAMI FLORIDA, USA 33126
                           (Prine ipal/C ounrry)

For the Vessel:    M/S NORWEGIAN GETAWAY (DECK AND ENGINE)

| | | | | |
|---|---|---|---|---|
| IMO No.:  9606924 | Gross Registered Tonnage (GRT): | 145450 | Flag: | IIAHAMAS |
| Official No. :  9000382 | Year Built:    2013 | Vessel Type:   PA SENGER  / CRUISE  SHIP | | |
| CBA Affiliation:     NSU CBA | Classification Society:  ONV | | | |

hereinafter referred to as the Employer.

WITNESSETH

| | | |
|---|---|---|
| I.1 Duration of Contract | | 3.00 months |
| 1.2 Position | NURSE | |
| 1.3 Basic | | per month |
| 1.4 Vacation Pay | | per month |
| 1.5 Subsistence Allowance | | per accrued vacation/leave day |
| 1.6 Seniority Pay | | per month     First Hire Date:  Ma)' 17, 2002 |
| 1.7 Special Monthly Incentives | | per month |
| 1.8 Special Bonus Incentives | | For Yellow CBA only |
| 1.9 Return Bonus | | |
| 1.10 Total Monthly Pay to Seafarer | | per month (for unlimited hours of work) |
| 2.0 Union Fee | | (Directly remitted to Union) |
| 2.1 POINT OF HIRE | MANILA | |

2.   The herein terms and conditions in accordance with Governing Board Resolution No. 9 and Memorandum Circular No. 10...⁴ both Series of 2010. shall be strictly and faithfully observed.

3.   The shipowner shall provide decent working and living conditions on board the ship. Likewise. the health and soci·  security protection benefits shall also be provided to the seafarer.

4.   Any alterations or changes, in any part of this Contract shall be evaluated, verified. processed. and approv  by the Philippine Overseas Employment Administration (POEA). Upon approval, the same shall be deemed an integral    rt or the Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean-Going

5.   Violations of the terms and conditions of this Contract with its approved addendum shall be groun  for disciplinary action against the erring party.
    IN WITNESS WHEREOF. ti  parties have iereto set their hands this **27 of September 2016** at Manila. Philippines.

GALLARDO. CHERY   DIANE MENDOZA                          JICKIE P. ILAGAN
              Seafarer                                    For the Employer

D.l/?l(
/I .r, o  "Yf1/,        Verified and approved by the POEA :

——————————                               ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ ~ –
         Date                                   Signature of POEA Official

NCL 19305-17

# C.F. Sharp Crew Management Inc.

Melissa Stanley
Payroll Accountant

## Letter of Assignment

OCT o 2 2016

The Master

M/S NORWEGIAN GETAWAY(DECK AND ENGINE)
USA, MIAMI

This will introduce GALLARDO, CHERYL DIANE MENDOZA who has been assigned to your vessel as NURSE.   For your use, the following are his Personal Data and Information regarding his wages and allotments:

| | |
|---|---|
| Employer Registration No. | 215 |
| Date Contract Commenced | **September 30, 2016 for 3.0 months** |
| Basic Vacation Pay | |
| Subsistence Allowance | |
| Seniority Pay | leave day |
| Special Monthly Incentives | , 2002 |
| Special Bonus Incentives | |
| Return Bonus | |
| Total Monthly Pay to Seafarer | |
| Union Fee | ted hours of work) |
| Cash Advance to be deducted Onboard | Union} |

Allotment to be Deducted          —— which  equals 100% of Basic Wages

| | | | |
|---|---|---|---|
| Philippine Passport Number | EC0647376 | Expiry Date | 23-Mar-19 |
| Philippine Seaman Book Number | C0204881 | Expiry Date | 29-May-19 |
| PHILIPPINE LICENSE | 0227360 | 26-Oct-93 | 29-Jul-17 |
| PHILIPPINE S. BOOK | C0204881 | 30-May-1• | 29-May.19 |
| PHILIPPINE PASSPORT | EC0647376 | 24-Mar-1t | 23-Mar-19 |

| | |
|---|---|
| Seaman Date of Birth | 29.07.1972 |
| Seaman Place of Birth | MANILA |
| Seniority Date with your Company | May 17, 2002 |

1  Allottee          CHERYL DIANE MENDOZA

   Relation          SELF

   Address          111 MUNLAWJN,  , ALITAGTAG BATANGAS

   Allottee to receive Php32,000.00 of allotment.

   Bank          BANCO DE ORO, PARAFiAQUE-PASCOR DRIVE

   Savings Account No.      6330051665

2  Allottee          CHERYL DIANE MENDOZA

   Relation          Self Allottee

   Address          111 MUNLAWIN,  , ALITAGTAG BATANGAS

   Allottee to receive 100 % balance of allotment.

   Bank

   savtngs Account No.

Revision Date: June a. 2010. No. 01- Issue Oatll: July 01.1995

White/ MASTER COPY

BANCO DE ORO, SM BICUTAN

001520282034

P,nk: F:An COPY
Green: 201 FILECOPY

# C.F: Sharp C-rew Management, Inc.

Next of Kin  Name                    **GALLARDO, GAIL FELICES**

Next of Kin Address               **SAN JOSE VILLAGE,**

Next of Kin Tel. No.               **09166265275**


This Seaman has passed a Pre-Sign on Medical Examination and all inoculations as required by your Company were current at his time of departure from Manila.

Very truly yours,

C. F. Sharp Crew Management, Inc.
as Agents

_____
JICKIE R ILAGAN
Fleet Manager
Crewing Operations Department

Assignment  Letter  Issued:
**September 27, 2016**
• Special Conb:ect(Tue   9/27/2016   1:11:48PM)

Revision  Date: June 8, 2010 . No. 01 - Issue Date: July 01 .1995

Whit?:  MASTER  1XIPY              Pink:  r.An  r.OPY              Green:  201 FILE COPY

**NCL 19305-19**

## ADDENDUM  TO EMPLOYMENT  CONTRACT

**C.F. Sharp Crew  Management, Inc,** a seabased  manning  agency registered  under the  Philippine  Overseas  Employment  Administration  (POEA)  herein  referred  to as the **FIRST  PARTY;**

and

**CHERYL  DIANE  M. GALLARDO**, joining  the  vessel *MIS* **NORWEGIAN  GETAWAY  (DECK  AND  ENGINE**) in the  capacity  of **NURSE**  position  with  seaman's  book  no  C0204881  herein  referred  to as the **SECOND  PARTY**;

Both parties  hereby  agreed  to the following  undertakings:

I.  That  the  Total  Monthly  Consolidated  Wages  (TMCW)  plus  ~%  (**FIVE**)  com1l1lss/0ll  on  consultations,  procedures,  laboratory  tests  and  medicines  sold  to  guests.  where  full  payment  is  collected,  subject  to adjustments  at Company's  sole  discretion.

2.  That  no  commission  will  be  paid  for  any  medical  care  of  crewmembers,  guest  accident  cases  or  outbreak  situations.;

3.  That  the  Total  Monthly  Consolidated  Wages  (TMCW)  for **NURSE**  as stated  in the  Article  6l  of  the  Agreement  and  its  corresponding  Wage  Scale,  shall  continue  as minimum  wages  averaged  for  each  contractual  period  for  those  signing  on to a vessel  on or after January  20l6.

Both  parties  hereby  express  their  conforrnityro  this  Addendum  to the  Employment  Contract  by  affixing  their  signatures  below.

FIRST  PART                                        SECOND   PARTY
CF SHARP  CREW MA  J\GEMENT  INC.


**JICKIE R.        AN**                          **CHERYL DIANE  M.  GALLARDO**
Fleet Manager                                       Crewmember
Crewing  Operations   Department

# RESPONSE TO REQUEST NO. 5

3114/2017                                    eSeaCare

~SeaCare      NORWEGIAN  GETAWAY  MEDICAL  CENTER

## ENCOUNTER SUMMARY
Dr. Gaona Vilamil, Julio Andres - Theron,  RN, Wanda

Norwegian Getaway-  2396 (Dec 18, 2016 - Dec 26, 2016)-  Dec 19, 2016 19:43 UTC-05:00

| PATIENT ID | NAME | DATE OF BIRTH | GENDER | CABIN |
|---|---|---|---|---|
| 9857000274103001 | MISS FORD, CHARLIE JESSICA | Apr29,2003 | F | 11904 |

## Triage

| DATE | PERFORMED BY | VISIT REASON |
|---|---|---|
| Dec 19, 2016 19:54 UTC-05:00 | Theron, RN, Wanda | |

PRIORITY
NON.c.JRGENT

CHIEF COMPLAINTS
Patient attends ell nlc for Swollen  Left foot

NOTES

Pax walks into Medical. Started with swollen foot Nov 25.

## Vitals

DATE                          PERFORMED BY
Dec 19, 2016 19:55 UTC-05:00   THERON,  RN, WANDA

VITAL  SIGNS

| TEMPERATURE | BLOOD PRESSURE | MAP |
|---|---|---|
| 37.2 C 99 FT | 98/59 LA sit | 72 |
| HEART RATE | SP02 | RESPIRATORY RATE |
| 97 bpm reg Radial | 99 Sp02  Finger  Room air | 22 breaths/min |

A.V.P.U

A

COMMENTS

## Allergy

| IDENTIFIED WHEN | IDENTIFIED BY | LAST REACTION |
|---|---|---|
| ALLERGY NAME | SEVERITY | REACTION |
| ? Keflex | Minor | Not Known |
| COMMENTS | | TREATMENT |
| | | not known |

## Medical  History

No Past Medical History documented.

## Surgical  History

No Surgical History documented.

**NCL 19305-1**

1/4

NCL 19305-1

311412017                                          eSeaCare

## OBGYN History

No Past OBGYN History documented.

## Psychiatric History

No Past Psychiatric History documented.

## Social History

No social history available.

## HPI

CELLULITIS

Pt accompanied by her mother, has cellulitis in Left foot. Refers previous history of recurrent cellulitis at same place. About three weeks befoer start with new episode of cellulits, started on Keflex, has adequate progressive resolution of the signs of infection but develops signs of urticaria, has hives and itchiness. After finish this course the cellulitis was resolved. During the last week, after her vacations started, has reappearance of the symptoms, reason why was assessed again and started on Clindamycin. Today is feeling persistent pain and the mother observe progression in the erythema.

## Review of Systems

No Review of Systems Performed

## Physical Examination

| DATE | PERFORMED BY |
|------|--------------|
| Dec 20, 2016 11:39 UTC-05:00 | Dr. Gaona Vilamil, Julio Andres |

GENERAL

Well developed, well nourished, alert and cooperative, and appears to be in no acute distress.
Additional Note: Pt feverish with tachycardia.

SKIN

Additional Note: Left foot 5th toe with local erythema, blister with apparently pus contain. Sore on exploration.

## Physician Orders

No pending physician orders.

## Nurse Orders

| STATUS | TASK | USER | DATE |
|--------|------|------|------|
| Completed | COULTER CBC | Theron, RN, Wanda | Dec 19, 2016 20:26 |

*2/4*

**NCL 19305-2**

3/14/2017                                    eSeaCare

UTC-05:00

LAB RESULTS

| | | |
|---|---|---|
| Hematocrit | 40.8 | 36.0-45.0 % |
| Hemoglobin | 13.6 | 12-17.5g/dl |
| MCHC | 33.4 | 31.7 - 36.0 g/dl |
| TotalWBC | 7.3 | 4.3 - 10.0 x 10"9/L |
| Granulocytes | 50.7 | 1.8 - 7.2 x 10"9/L |
| Lymph+Monos | 2.9 0.7 | 1.7 - 4.9 x 10"9/L |
| Platelets | 303 | 140 - 440 x 10"9/L |

FINDINGS                                      COMMENTS

## Current Medications

No medications found

## New Medications

No medications found

## Discontinued Medications

No medications found

## Past Vaccinations

No vaccinations available.

## Vaccinations

No vaccinations performed.

## Assessment

No Assessments Performed.

## Diagnosis

3/4

**NCL 19305-3**

3114/2017                                              eSeaCare

| DIAGNOSED DATE | PERFORMED BY |
|---|---|
| Dec 20, 2016 | Dr. Gaona Vilamil, Julio Andres |
| TYPE | DIAGNOSIS |
| Final! | L03.032 • Cellulitis of left toe |
| NOTES | |

## Notes

| DATE | PERFORMED BY |
|---|---|
| Dec 20, 2016 11:44 UTC-05:00 | Dr. Gaona Vilamil, Julio Andres |
| NOTES | |

Labs performed: Normal parameters for wbc, normal kidney funtion

Started on Levofloxacine course, initial dose given IV
Exploration blister under aseptic measures, obtaining serotic liquid, local dressing

Pt can be discharged, continue on oral antibiotics, continue with previous course of Clindamycin

| DATE | PERFORMED BY |
|---|---|
| Dec 20, 2016 09:13 UTC-05:00 | Theron, RN, Wanda |
| NOTES | |

Below note - late entry. Patient was seen and attended to on 12/19/2016.

| DATE | PERFORMED BY |
|---|---|
| Dec 20, 2016 09:12 UTC-05:00 | Theron, RN, Wanda |
| NOTES | |

Patient seen by Dr Julio. IV started with 22G Saftima on Right arm. Blood taken and tests done. IV Levaquin given in 250ml NSS over 1 hrs. Wound care done by Dr Julio. On completion - IV removed. Patient discharged. Leaves Medical accompanied by her mother. Patient in satisfactory condition.

## Disposition

| MEDICAL DEPARTMENT DECIDED TO | PERFORMED BY | DATE |
|---|---|---|
| Discharge from our care, no follow up required | Dr. Gaona Vilamil, Julio Andres | Dec 20, 2016 11:44 UTC-05:00 |
| COMMENTS | | |

DISCHARGE DOCUMENTS

No documents selected.

No instructions documented.

## Addendums

No addendums available.

*414*

NORWEGIAN CRUISE LINE    OCEANIA                    Regent CRUISES

MED/P004/F2
Rev. 00- 09/01/2015

## MEDICAL PRE-CONSULTATION FORM

Date: De.e- IC, , ';)() (~          Time: 7: 10

Name: C~r |·e_ ~

Date of Birth: AP'''   Age: rr    cabin/Suite/Stateroom#: 11904.   Safety#: -

Position/Rank:          Apollo# (F&B staff only):

Traveling Companion/cabin Mate:  L QQ _fuc&

Drug Allergies:_,:_-~--?  _  L.12.._-(L_fQ_x'     11 doses /3.5 days

**Medication Taken:** Clindamycin - 300 mg

**Significant Medical History:** Cellulitis in left foot Nov 25th took Keflex 3000mg/day for a week improved. Cellulitis returned Dec 16th. - started on Cl 300 mg tid, foot not improving & appears

**Present Medical Problem:** Cellulitis

I hereby authorize the Ship's Medical Staff to examine me, perform tests to obtain diagnosis and treat me accordingly.

(Patient's Signature)

*ALL GUEST MEDICAL SERVICES ARE SUBJECT TO CHARGE AND ARE NOT INCLUDED IN THE PRICE OF THE CRUISE TICKET.*

**NCL 19305-5**



NORWEGIAN CRUISE LINE•    -0CEANiA CRUISES    *Regent* SEVEN SEAS CRUISES    MED/P004/F3

Rev.00-  09/01/2015

**INJURY AND ILLNESS CONSULTATION FORM** *(CONFIDENTIAL)*

| 1. Vessel: | 2. Voyage#: |
| --- | --- |

Getaway    5716I2I8

| 4. Status | s. ~m~ __.__.l__ +___:~;:io\:...:..,..:c=----------\-_-:-_-    _ | Jï-J>lbl~WJï\   \\°\d l\-oR Suite/Stateroom#: |
| --- | --- | --- |
| CREW GUEST or Other (DESCRIBE) | (LAST, FIRST, MIDDLE)  **6. Address: (CITY, STATE, ZIP CODE)** _____  7. ~~U!Yi    \A. s A   . (if Crew) Position:------- | 9·:~J    \<,, \ \0\  \ \ ▷  IO~~j    \~~S~  11. ~elate:    4- \ c..  12l-.G.@~itir:   --:\- *e*~ |
| | 8. ~ f J:i;{L~b S L:;,.o:  Apollo# (F&B Staffonly) | |

**HISTORY PRESENT ILLNESS / INJURY:**  S~\\<c>"'-    (_L~ .Gd+   -  ~~~    *lr:-cA_f*
-sW ~~  or-...  \cecr,e:x...   - ~.\.  1:,.e+.te....-
~~    ~e_    .\_ \\ {-a6"{1§;

1YJ:OI~J1B;J.8EfYR:liJ1Uafffiffiitffi.!'1
C\,'1"-~°""-.\ c\-    300mg (been using for 5 days)

~~-8-(il~;
~ \ce.C\e~   *r~~h\*

P~1'-tllST,;9~\'- CAD, MI, HTN, CHF, Arthritis, DM, CVA, PUD, TAH, CABG, PTCA, Cancer, Appendectomy, Cholecystectomy

**TETANUS:**

| MEDICAL TESTS: | | | MEDICAL TREATMENT: |
| --- | --- | --- | --- |
| Platelets | CPK and CPK-MB | CXR | dTO.Scc IM       Hypertet  250 UI tM |
| Electrolytes | Troponin | ABG    Fi02:      % | IV V Type / Rate: |
| BUN | PT/ PTT | EKG | 02 |
| Creatinine | Liver Profile | BHCG | Monitor / Tele |
| Glucose | Amylase / Lipase | | Pulse Oximetry |
| Urine/  Dipstick | KUB | | Inhaler |
| | R:it / Eri>rt .11hn_mon | | |

**PHYSICAL EXAM:**

VITAL  SIGNS:  BP: D"\~/S"G:\.  ·  P:    OC\    .RR:   "2--Z...  ·   TEMP: ~o"':J-   · PULSE OX: ~°\.}:,

| GENERAL: | Well developed, nourished, indistress |
| --- | --- |

HEENT:    Head atraumatic.  PERRL EOM's intact.  Nystagmus.  Anicteric.  Sharp discs.  Throat dear.  TM's dear.
Mucosa:  Moist    / Dry   / Pink    / Pale

Extra Information:

| NECK: | supple.    Kernigs.    Brudzinski.    JVD.    Strldor. |
| --- | --- |
| Extra Informati~ | |

| CHEST: | aear breath sounds.  Normal expansion.  No wheezing, rales.    Posterior  Thorax: |
| --- | --- |
| Extra Information: | - |

| CV: | PM II 4th  ICS MCL    No gallops, murmurs.    Regular  rhythm. |
| --- | --- |
| Extra Information: | |

**NCL 19305-6**

  *Regent* SEVEN SEAS CRUISES

MED/P004/F3
Rev. 00 · 09/01/2015

ABD:     Non-distended.   Bowel sounds: *-I*          Soft *I* Tender          Guarding

Tenderness:   Rovsing.  Mc Burney.  Murphy.  Rebound.  Organomegaly:

Lumbar Area:

Extra Information:     *p7*

GU/ GYN: Aank          None          Normal  Genitalia.  Testes Descended *I* Tender.     Hernias:  L      R      None
              R

Hemmocult  Stool:          Pos     Neg      Color:

Extra Information:

EXT:  Cyanosis.  Oubbing.  Edema.     *Ic:07  /2,J:.J?N c S-:  . tJo  &:;E~.     lv.:)   7 c'JJ.,:!?~ uJ...~_$     'r7H   7o€*

Deformities:          *JV<>   ~.rre,tc.7',  ./\  · -r t»  .M.:tJC*

NEU RO:   Patient is alert, attentive, cooperative.  Oriented to person, situation, place and time.  DTR's symmetric

              Goal-oriented  conversation.  Clear speech.  Coordinates well.  Moves face and all four extremities  symmetrically.

Extra Information:

SKIN:          Good turgor, no rashes.  Diaphoretic, warm, dry.

Extra Information:

LAB RESULTS:

| WBC | Glu | BUN | pH | INTERPRETATION: | Fi02 | % |
|-----|-----|-----|-----|-----|-----|-----|
| HgB | Na | CL | 02 | | CK/MB/Troponin: | |
| Hct | K | Amy/Lipase: ___ | C02Cr _____ | | Others: _____ | |

EKG:          Rhythm:          Rate:          Impression:

X-RAY:

CLEVELAND CLINIC ADVICE RECEIVED.

WORKING DIAGNOSIS:   *1· Joor   c.e/lv/,,..,, s*
              *~s,s-r~'''7   /,/'j~-r_...,,.*

TREATMENT:   *~    .: cae-.  -  p.PUA/   p.AN~I -*

   *~    ,, _E_(JCl /!~e rxu   -r  :   IV ,*

      *C,0.N7'Nvl   .le....o'lo«' C,A,JJ'  JO;J'''/.  ..:.i...)  ft  -I Q-t  rf*

      *C.O~h.Jt..,   [.  fJ/J  C I/,J',l,c;,A M Jc,JJ   3Z)/ e/8 f,...._  ,*

INSTRUCTIONS/ FOLLOW UP/ REFERRAL:

              *)*

MAY RETURNTO DUTY:   *r-; I r <,*          OFF DUTY:_____          DAYS:_____

PHYSICIANSIGNATURE:          Date: _____

*i*

**NCL 19305-7**

~A;ti§Nit$J<iNATU~:  )  _____  (IN RECEIPTOF DISCHARGE INSTRUCTIONS)

  

~NORWEGIAN
CAUISII LINE

·OCEANIA
CRUISES·

Regent
SEVEN SEAS CRUISES

## PROMISSORY NOTE FOR PAYMENT OF MEDICAL SERVICES

I, *I (2{2 ~*                          the undersigned, the patient (or the patient's duly authorized representatives) do hereby promise to pay to the order of NQ. (Bahamas) Ltd., Oceania Cruises, Inc., or Seven Seas Cruises S. DE R.L., (the "Company"), any and all medical expenses and/or fees as incurred for services and medical supplies provided by medical staff on board the vessel. As such, I understand and agree that full payment is due upon services rendered.  It is the policy of the "Company" to collect payment in full at the time of service.  I understand that if I need to make special payment arrangements, it is my responsibility to initiate this effort with the respective onboard Financial Officer at the Reception Desk.  I also understand that the "Company" reserves the right to charge my onboard account and/or credit card on file for medical service charges.  As a last resort, if I fail to adhere to the financial policies of the "Company", my outstanding onboard account may be sent to collections and I will be responsible for any additional costs incurred.

I acknowledge that medical doctors and nurses are made available onboard the vessel for my convenience.  I understand that the onboard physicians do not accept Insurance assignments from any insurer.  I understand that although my medical service charges may be submitted to my insurance carrier for consideration, I agree not to hold the "Company", its ship, agents, consultants or employees responsible or liable for any portion of the charges not covered by my travel, health, or other insurance carrier(s).  I understand that health Insurance is a contract between my insurer and me.  Any charges not paid by insurance for any reason are solely my responsibility.

I, (the "Patient"), hereby waive presentment, demand, protest or other notice of any kind and the right to interpose any defense, setoff or counterclaim of any kind in any action or proceeding on or arising out of this Note.  I, also agree to pay all costs, expenses and fees of collection incurred by the "Company", its successors or assigns, parent or subsidiaries in enforcing this Note Including, but not limited to, any attorney fees, costs and expenses.

### PATIENT'S REASSIGNMENT AND RELEASE STATEMENT

By signing below, I understand and accept the financial policies of the "Company" and its parent and/or subsidiaries.  I also understand that the "Company" reserves the right to charge my onboard account and/or credit card on file for medical service charges.  I understand that I am ultimately financially responsible for the services I received by the medical staff onboard the "Company" vessels. Should I neglect to meet my financial responsibility, I understand that I may be charged additional fees incurred in the collection process, including from third party collection agencies.  In the event your account is not settled onboard, please send your payment to: Norwegian Cruise Line Attn: Cashiers/Payment Applications to 7665 Corporate Center Drive, Miami FL 33126.

PATIENT'S SIGNATURE    *I L ~*

DateJ.IL.d/....2{)  |l:J

### CONSENT FOR MEDICAL TREATMENT

I, the undersigned, the patient (or the patient's duly authorized representative) do hereby voluntarily consent to and authorize medical care encompassing all diagnostic and therapeutic treatments considered necessary or advisable in the judgment of the medical staff.

I understand that the medical care furnished to me will be limited to the type of care necessary, in the opinion of the medical staff, for my condition at the time of treatment.  I accept the services of the vessel's medical staff and understand that whatever service is rendered is considered necessary and/or emergency treatment within the scope of the limited shipboard medical facility.  I understand that the medical staff may be required to provide confidential medical information and/or records of my medical treatment to others in the ordinary course of business and/or to comply with regulations of regulatory agencies.  I hereby authorize such release of this information/record.

PATIENT'S SIGNATURE  */ l_b/t f*          —

*oatefurl.,20/f*

Rev.1 8/10/2016

**NCL 19305-8**



## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION FORM

I am aware that any treating physician, nurse, medical consultant or provider, as well as Norwegian Cruise Line Holdings, its employees, officers, agents, representatives and insurers, may use or disclose my health information, including without limitation any and all medical, treatment and diagnostic records, reports, charts, notes, correspondence, counseling or support service records, and personal, financial or insurance information, for purposes of providing or obtaining medical care or advice or other assistance or services for me (including billing for such services), complying with legal or other reporting obligations, and/or investigating or evaluating any alleged or reported injury, loss, damage, crime and its or their causes or circumstances. I authorize release of my health information as described for these purposes or to any governmental or quasi‑governmental authority, such as the Federal Bureau of Investigation, the U.S. Coast Guard, the US. Department of Transportation, the Center for Disease Control or any other national, state or local authority, either in the U.S. or abroad, or any other person or entity as may be required by law.

_____   Dec 19, 2016_____

ure of Patient or if Unable, next of kin) Date

Mother Lee Ford_____

Printed Name Relationship to Patient

Date:

MV NORWEGIAN  GETAWAY

~C"cC\          /   C.V'-....°'-v \·, ce_

.::sQ_  l\ =, c>4·

"!:)cl~     ..  u, \'2..0\ \ -zs;:;o >

| | | | | | |
|---|---|---|---|---|---|
| ID: 000000155 | | | 12-19-16 | | |
| CVWB | | | 20:26 | | |
| | | | Patient | | |
| | | | Limits 2 | | |
| WBC | 7.3 | xlOA3/uL | 4.5 | 10.5 | |
| LY | 40.0 | % | 20.5 | 51.1 | |
| MO | 9.3 | % | 1.7 | 9.3 | |
| GR | 50.7 | % | 42.2 | 75.2 | |
| LY# | 2.9 | xlOA3/uL | 1.2 | 3.4 | |
| | | | | | |
| MO# | 0.7 H | xlOA3/uL | 0.1 | 0.6 | |
| GR# | 3.7 | xlOA3/uL | 1.4 | 6.5 | |
| RBC | 4.57 | xlOA6/uL | 4.00 | 6.00 | |
| Hgb | 13.6 | g/dL | 11.0 | 18.0 | |
| Hct | 40.8 | % | 35.0 | 60.0 | |
| MCV | 89.2 | fL | 80.0 | 99.9 | |
| MCH | 29.8 | pg | 27.0 | 31.0 | |
| MCHC | 33.4 | g/dL | 33.0 | 37.0 | |
| RDW | 12.3 | % | 11.6 | 13.7 | |
| Plt | 303. * | xlOA3/uL | 150. | 450. | |
| MPV | 7.3 *L | fL | 7.8 | 11.0 | |
| Pct | .222 * | % | 0.190 | 0.360 | |
| POW | 16.8 * | | 15.5 | 17.1 | |

C·ccot o x-rr;s~

~r:·· FJ::ctio;,  Pc.1fl

1 J  r,er;  ~:nW          OB:26  l·M

S::ample T-:J-:          P::itie:lt

?.1~ic>n!  ~D:               F~rd

C'c;c  Lot  N..mbEr:      6034BU6

3er1n-:  Nurr.!:-er:    Otl00P2103;

| | | | |
|---|---|---|---|
| GLU | S:: | 73·1:8 | rng,;tL |
| BUN | ii | 7-22 | mg/cil. |
| GA | 2.0 | e0-1·n | m~/dl |
| CRE | 0.5 z | 06-1 .2 | llig/dL |
| ALB | '),6 | 3.3-5S | ~/:jl |
| ?HC.5 | 5.2 * | : Z·4 | ::ir:/dl |
| t~rl" | l4~ | 1>a~45 | r,l.TI~l/L |
| K+ | ~/ g | 3.6-5.1 | l:lll0:L |
| CL~ | l0:t | es~,0a | mn1:l/L |
| tC02 | 26 | 18-33 | mn,.il/l |

Q:          CV

HEM 0     LIP 1+     IC 0

NCL 19305-10

# l,r.TI ·NonlVegianCruise  Line

l!!!!!!'JGuest   Medical Billing Form

**Statement of Services**
All prices in USD

## LOCAL NORWEGIAN  GETAWAY

| | |
|---|---|
| Reference No: | P161219194405# |
| Patient: | FORD.CHARLIE |
| Cabin No: | 11904 |
| Diagnosis: | Cellulitis LEft foot/Blister  on Left foot |

Date of Services     12-20-2016

| Item Description | Insurance Code | Quantity | Total Price |
|---|---|---|---|
| **Medication (Supplies** | | | |
| *Administered  by Doctor  Julio Andres Gaona Villamil and Administering  Nurse Mendoza, Cheryl Diane* | | | |
| LEVOFLOXACIN (LEVAQUIN) , 500 MG | | 5 | 132.30 |
| LEVOFLAXACIN(LEVAQUIN), 500  MG | | 1 | 150.00 |
| STERILEGLOVES SIZE 6.5 | | l | 2.25 |
| | *Sub Total Medication/Supplies* | | 284.55 |
| **Services** | | | |
| *Administered  by Doctor  Julio Andres Gaona Villamil and Administering  Nurse Mendoza, Cheryl Diane* | | | |
| In Patient admission on 12/19/16 | | 1.00 | 149.00 |
| *Administered  by Doctor  Julio Andres Gaona Villamil and Administering  Nurse Theron, Wanda* | | | |
| Office Visit, Doctor - Non-Posted Hours | | 1.00 | 184.00 |
| *Administered  by Doctor  Julio Andres Gaona Villamil and Administering  Nurse Mendoza, Cheryl Diane* | | | |
| Nursing Fee Per Hour Rate | | 2.00 | 60.00 |
| Intravenous  Catheter Insertion  (plus supplies) | | 1.00 | 109.00 |
| Blood Extraction/Phlebotomy | | 1.00 | 35.00 |
| Injection  - IV (Single Shot) (plus supplies) | | 1.00 | 69.00 |
| NItrile (non-latex  supplies) | | 1.00 | 25.00 |
| Coulter  CBC | | 1.00 | 110.00 |
| IV pump | | 1.00 | 35.00 |

| | | | |
|---|---|---|---|
| Physician | Date | Patient's Signature | Date |

**NCL 19305-11**

# m'n Norwegian Cruise Line

I!!eGuest        MedicaBillingForm

**Statement of Services**
All prices In USO

## LOCAL NORWEGIAN  GETAWAY

| | | |
|---|---|---|
| Reference No: | P161219194405# | |
| Patient: | FORD.CHARLIE | |
| Cabin No: | 11904 | |

Date of Services    12-20-2016

| Item Description | Insurance Code | Quantity | Total Price |
|---|---|---|---|
| services | | | |
| *Administered  by Doctor  Julio Andres  Gaona Vi/Jamiland Administering  Nurse Mendoza, Cheryl Diane* | | | |
| Renal Function Panel | | 1.00 | 125.00 |
| Dressing (excl cost of materials) | | 1.00 | 28.00 |
| | | *Sub Total Services* | 929.00 |
| | | Total: | 1,213.55 |

MEDICAL AUTHORIZATION
I,                                                                                          ,HEREBY AUTHORIZE THE MEDICAL STAFF AND/OR THEIR AGENTS, EMPLOYEES AND REPRESENTATIVES TO CONDUCT SUCH TREATMENTS,  PROCEDURES, ADMINISTER ANESTHESIA, MEDICATION AND OTHER THERAPIES, WITH THE EXCEPTION OF                                                    (IF NONE, ENTER THE WORD, NONE) AS THEY MAY DEEM NECESSARY IN THEIR MEDICAL JUDGEMENT.
I UNDERSTAND THAT THE MEDICAL CARE FURNISHED TO ME WILL BE LIMITED TO THE TYPE OF CARE NECESSARY, IN THE OPINION OF THE MEDICAL STAFF, FOR MY CONDITION AT THE TIME OF TREATMENT. I ACCEPT THE SERVICES OF THE VESSEL'S MEDICAL STAFF AND UNDERSTAND THAT WHATEVER SERVICE IS RENDERED IS EMERGENCY TREATMENT WITHIN THE SCOPE OF THE LIMITED SHIPBOARD MEDICAL FACILITY. I UNDERSTAND THAT THE MEDICAL STAFF MAY BE REQUIRED TO PROVIDE CONFIDENTIAL MEDICAL INFORMATION AND/OR RECORDS OF MY MEDICAL TREATMENT TO OTHERS IN THE ORDINARY COURSE OF BUSINESS AND/OR TO COMPLY WITH REGULATIONS OF REGULATORY AGENCIES. I HEREBY AUTHORIZE SUCH RELEASE OF THIS INFORMATION/RECORD. I ACKNOWLEDGE THAT MEDICAL DOCTORS AND NURSES ARE MADE AVAILABLE ON THE SHIP FOR MY CONVENIENCE. I UNDERSTAND THAT SHIP PHYSICIANS DO NOT ACCEPT INSURANCE ASSIGNMENT FROM ANY INSURER. AS SUCH, I UNDERSTAND AND AGREE THAT FULL PAYMENT IS DUE UPON SERVICES RENDERED. I UNDERSTAND THAT ALTHOUGH THIS BILL MAY BE SUBMITTED TO MY INSURANCE CARRIER FOR CONSIDERATION, I AGREE NOT TO HOLD THE CRUISE LINE, ITS SHIP, AGENTS, CONSULTANTS OR EMPLOYEES, RESPONSIBLE OR LIABLE FOR ALL OR ANY PORTION OF ANY CHARGES NOT COVERED BY MY TRAVEL, HEALTH, OR OTHER INSURANCE CARRIER(S).

For billing inquiries contact NCL Customer Relations !866.625.1164  (interntational +1.305.436.4000) or visit www.ncl.com

| | | | |
|---|---|---|---|
| Physician | Date | Patient's Signature | Date |

NCL 19305-12

**Hnsp**ttal
Norwegian   Getaway

303   NURSE  1

CHK   **434**      20DEC'16     h:51

TREATMENT            '329.00
MEDICATION           284.55

Subtotal             i213.55
Total Paid 1 2 -l ~3 . :, !".,
11681
XXXN161220l.~
MANUAL ENTRY
Cabin/Acc:11SS;
Ms LEE CLANCY   ~02~
CABIN  CHARGE        |213_55

Name:

Signature:_-_.._. . .

Thank YOJ f~r 1isiting!

Remember  to wa h 1our hands
often  to **help**  void  the  most

common  a lrnents.

**NCL 19305-13**



# RESPONSE TO REQUEST NO. 7

# *JULIO   ANDRES   GAONA   VILIAMIL*

## *General   Surgeon   Doctor*

Professional   ID No.  63-295/2001

Cr. 54 # 13 5 - 3 5, Condominio  Hacienda  de la Colina

Int.  7 Apartment   403

Bogota,  Colombia

ID 79.721.086

Mobile   +57  3143852307

Home(+571)8115587

E-Mail:  andresmd03@yahoo.com

andresmdO  3@hotmail.com

---

*COLLEGE*

---

*JUAN N CORPAS  MEDICINE  SCHOOL*
*GENERAL  SURGEON*
Bogota, Colombia  December 1999
RM 63-295  /  2001

---

*WORK EXPERIENCE*

---

*CARNIVAL CRUISE  LINE*
*Ship  Physician*
*Start  on Nov 2014*

*PULMANTUR CRUISES*
*Senior Ship Physician*
*NOV 2010-   OCT 2014*

*ARMENIA SALUDCOOP  CLINIC*
EMERGENCY ROOM
CHIEF DOCTOR.
Armenia Quindio,  October 2006  -  November  2010.

*SACRED HEART  OF JESUS HOSPITAL*
Social Service 2000.  Medical emergency and  outpatient department. January  2001
to  December 2003.  Emergency room, January 2006  - November 2010.
Quimbaya  Quindio

NCL 19305-21

*NEW EPS. FAMILY MEDICAL CENTER. PASBISALUD*
Medical Outpatient Clinic, chief program of chronic patients. (HB P, 0M, Chronic failure COPD)
Calarca, Quindio. August 2008 - November 2010.

*SAINT VINCENT HOSPITAL*
Emergency Room doctor
Montenegro, Quindio, February 2005 to September 2007.

*COLOMBIAN NATIONAL ARMY*
*Service Battalion 8th BRIGADE*
Emergency room Doctor.
Armenia, Quindio May 2001 to December 2005.

*COURSES, DEGREES AND POST UPDATES*

*EMERGENCY AND CRITICAL CARDIOLOGY CARE*
*UNIVERSITY OF CARTAGENA*
*Medicine College*
Pereira, Colombia May 2001

*5th LATIN AMERICAN MEDICAL CONGRESS ON PRIMARY CARE*
*FOREST COLLEGE/ UNIVERSITY OF SAVANNAH*
Bogota, Colombia June 2004

*BLS ACLS GUIDE FOR PROVIDERS*
*American Heart Association*
*SALAMANDER FOUNDATION*
Armenia, Colombia June 2006

*BASIC LIFE SUPPORT ADVANCED MANAGEMENT INITIAL EMERGENCY*
Vital Care/ *Critical* Care
Armenia, Colombia February 2009

*A VB AVCA MANUAL FOR PROVIDERS*
*CPR and Sport medicine services.*
*Pullmantur cruises*
Ocean Dream MV, Julio 2011.

*BLS ACLS*
Emergency Medical Consultants Inc
TC ID: FL05170
*Pullmantur cruises*
*MV Sovereign, April 2013*

NCL 19305-22

*BLS ACLS GUIDE FOR PROVIDERS*
*American Heart Association*
*SALAMANDER FOUNDATION*
Cali, Colombia, July 2015

## LANGUAGES

**ENGLISH (J1uent)**
**SPANISH (native language)**
**PORTUGUESE (advanced)**

## WORK REFERENCES

**MONICA RECINOS. MD**
Medical Superintendent Pullmantur cruises
Phone: +34 628035113
MRecinos@pullmantur.es

**JAVIER MAURICIO JIMENEZ. MD**
Senior Ship Physician NCL
Phone:+573003550448
javijimed@gmail.com

**DIDIER ARMANDO CADAVID**
Manager Armenia Saludcoop Clinic
Phone: +576 - 7467626
didiercadavid@gmail.com

## PERSONAL REFERENCES

**DIEGO MAURICIO NOGUERA**
Ship Physician NCL
dnoguera07@gmail.com

# RESPONSE TO REQUEST NO. 23

NCL 19305-24



# RESPONSE TO REQUEST NO. 34

| SMS/MED/P001A | | MEDICAL PROCEDURES: SCOPE OF RESPONSIBILITIES | DATE: SEPT. 1, 2015 | REVISION: 00 |
|---|---|---|---|---|

**1.0 Scope**

This procedure defines the scope and extent of shipboard medical responsibilities.

**2.0 References**

- SMS Manual Chapter 7
- SMS Manual Chapter 8
- SMS/Emergency/(all applicable)
- SMS/DEH/P001
- Vessel Sanitation Program Operations Manual (VSP)

**3.0 Authority and Responsibility**
Direct responsibilities for implementation remains with the following individuals:

- Master
- Staff Captain
- Doctor
- Nurse

Further responsibility for implementation remains with the following individuals:

**4.0 Procedure's Content**
**4.1 General**
The Medical Manual, including all attachments, shall be used as administrative documentation to support the Doctor and Medical Staff in their day to day activities. The Doctor and the Medical Staff shall not be constrained by this manual when it comes to administering proper medical treatment to a patient.

Doctors may always contact the Corporate Medical Department and/or the Cleveland Clinic:

The Cleveland Clinic
2950 Cleveland Clinic Blvd.
Weston, FL 33331
Telephone: (954) 689-5130
Fax: (954) 689-5145

E-Mail: ccfedregistrar@ccf.org

**4.2 Topics**

**Operations**

The goals of the Ship's Medical Center are as follows:

- To provide emergency medical care to the best of your abilities for guests and crew onboard.
- To stabilize patients and/or initiate diagnostic and therapeutic intervention to the best of your abilities onboard.
- To facilitate the evacuation of seriously ill or injured patients when deemed necessary by the ship's Physician.

NCL, OCI & RSSC attempts to accommodate passengers with disabilities. Because of the inherent limitations of cruising, on occasions the Ship's Physician will assist the Staff in determining if a potential passenger represents a risk to himself and/or others. If either the Captain and/or the Ships' Physician judge an individual to be unfit to travel aboard a vessel, they will contact the Corporate Legal & Medical Departments for further discussion prior to denying that individual passage.

OCI/RSSC - The Doctor and Nurse shall never be off duty at the same time. If at any point the Doctor is unavailable during an emergency situation, the Staff Captain shall be notified by the Nurse and if necessary the local emergency services and/or Cleveland Clinic can be contacted for advice.

NCL - The Senior Doctor and Doctor shall never be off duty at the same time. If at any point the Doctor is unavailable during an emergency situation, the Staff Captain shall be notified by the Nurse and if necessary the local emergency services and/or Cleveland Clinic can be contacted for advice. At least one Doctor and two Nurses shall be present and on duty during the Medical Facility open hours.

Shipboard Medical responsibilities and reporting structure are divided as follows:

| AREA | RESPONSIBLE PERSON | OVERSIGHT | SHORESIDE SUPPORT & REPORTING |
|---|---|---|---|
| Medical Emergency | Doctor<br>General Manager<br>Staff Captain | Master | SVP Marine Operations<br>Chief Medical Officer |
| Documentation & Pre-Employment | Doctor & Nurse | Staff Captain | VP Shipboard Human Resources<br>Chief Medical Officer<br>Medical Director |
| Inspections | Doctor & Nurse | Staff Captain | Chief Medical Officer<br>Medical Director<br>Sr. Director, Environment, Medical Policy & Public Health |
| Hospital Management | Doctor & Nurse | Staff Captain | Chief Medical Officer<br>Medical Director<br>Sr. Director, Environment, Medical Policy & Public Health |
| Outbreak Prevention and Response Plan (OPRP) | Responsible Person for each area/operation requiring sanitation | General Manager/ Hotel Director/ Staff Captain/Captain | Director, Hotel Operations<br>Chief Medical Officer<br>Medical Director<br>Director, Environmental Health & Occupational Safety<br>Sr. Director, Environment, Medical Policy & Public Health |
| Training | Doctor with the cooperation of Department Heads | Staff Captain | Chief Medical Officer<br>Medical Director<br>Sr. Director, Environment, Medical Policy & Public Health |

**Emails Crew & Guest Medical Issues Protocol**

The Doctor and Nurse are to copy both the Captain, Staff Captain, and General Manager/ Hotel Director when communicating issues regarding crew or guest medical issues via e-mail.
No E-mails are to be sent from the medical center without the Staff Captain and Captain being included in copy.

No member of the Medical Center staff may send correspondence on Cruise Line stationery, or act as an agent to any outside organization or individual without first obtaining approval from the Staff Captain or the Master of the vessel and the Corporate Chief Medical Officer or Medical Director.  All business-related faxes must be co-signed by the Staff Captain.

While onboard the vessel, all Medical Center staff should carry a two-way communication device.  A physician going ashore must notify the Medical Staff on duty and Staff Captain when leaving the ship, and estimated time when he/she can be expected to return.

The physician(s) report(s) directly to the Staff Captain. In addition, the physician(s) may contact the Corporate Medical Department directly with any Medical matters related to clinical practice.

**Hospital Opening Hours:**

Opening hours for the hospital are to be as follows: (Each vessel can work with the Staff Captain to modify open hours as needed, but never exceeding a maximum of 6 hours per day) Medical Center hours of operation may be reduced / adjusted on Embarkation days at the discretion of the Staff Captain.

**Guests**: 08:00 to 09:30 18:00 to 19:30
**Crew:** 09:30 to 10:30 17:00 to 18:00

All printed material, Passages, etc, should reflect these hours.

**Medical Staff Conduct**
The Medical Center staff consists of Officers who should conduct themselves, at all times, to reflect this position. This includes becoming familiar with all relevant rules and regulations which pertain to officer conduct, and always wearing the correct uniform when appearing in public areas of the ship.

The medical team ~~is considered an alcohol "Zero Tolerance" position~~ shall abide by the Drug and Alcohol Policy. ~~As such, it is unacceptable for the Medical Center staff to consume any alcoholic beverages while on board.~~

**Medical Staff On-Call and Work Hours**
The Medical Facility on Oceania & Regent Seven Seas must be attended by the Doctor and at least one Nurse during regular open hours, the Doctor and Nurse will be on-call 24/7 and in vessels with two Nurses, the Nurse on-call will be done 24 hours on / 24 hours off.

The Medical Facility on NCL ships must be attended by one Doctor and two Nurses during regular open hours, one Doctor and one Nurse shall be on-call 24/7.  The Doctors on-call will be done 24 hours on / 24 hours off on ships with two physicians and 24 hours on / 48 hours off on ships with three physicians. The Nurses on-call will be done 24 hours on / 48 hours off on all ships with 3 Nurses.

**4.3 Checklists/Forms**

All related checklists and forms are within the manual.

**4.4 Retention Period**

N/A

**NCL 19305-28**