UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-24404-MORENO/LOUIS

LEE CLANCY FORD as Mother and
Next Friend of Jane Doe, a Minor,

    Plaintiff,

vs.

NCL (BAHAMAS) LTD., a Bermuda
Company d/b/a NORWEGIAN CRUISE
LINES,

_____/

## DEFENDANT'S UPDATED *DAUBERT* MOTION TO STRIKE PLAINTIFFS' EXPERTS CHRISTOPHER MCCLURE, DR. JAN VENTER, DR. BEATRICE GOLOMB, DR. STEVEN BIRD, AND DR. WAGDY WAHBA

This case arises from injuries allegedly caused by an antibiotic medication administered to Plaintiff, a minor, for the treatment of a skin infection while she was traveling on the Norwegian *Getaway*. Plaintiff has disclosed eight separate experts in this matter, seven of whom are medical experts. Defendant, NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINES ("Norwegian"), moves to strike all or portions of the opinions provided by five of these experts, Christopher McClure, Dr. Jan Venter, Dr. Beatrice Golomb, Dr. Steven Bird, and Dr. Wagdy Wahba.[1] In support of this *Daubert*[2] motion, Norwegian states as follows:

### The *Daubert* Standard

*Daubert* requires the district court to act as "gatekeeper to insure that speculative and unreliable opinions do no reach the jury." *United States v. Masferrer*, 367 F. Supp. 2d 1365,

---

[1] The parties have been unable to coordinate depositions of Plaintiff's two remaining medical experts, Dr. Fortunato and Dr. Suite, before filing this motion, and Norwegian reserves the right to seek leave from this Court to supplement its *Daubert* motion following their depositions.

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

1371 (S.D. Fla. 2005). When analyzing a challenge to expert testimony under *Daubert*, a court must determine whether a proffered expert has employed "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). A trial court, in determining the admissibility of expert testimony under Rule 702, must conduct a "rigorous three-part inquiry," considering:

> whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

A district court is thus required to act as a gatekeeper "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the practice of an expert in the relevant field." *McDowell v. Brown*, 392 F.3d 1283, 1298–99 (11th Cir. 2004) (quoting *Kumho*, 526 U.S at 152). "[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist." *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, at 1315–16).

1. <u>This Court Should Strike McClure's Opinions</u>

McClure refers to himself as a swim coaching expert and opines on several aspects of Plaintiff's training, joint health, and future prospects as a swimmer. [*See* McClure's Expert Disclosures, attached as Exhibit 1]. This is the first time McClure has issued expert opinions and testified as an expert. McClure is unqualified to render expert opinions and his opinions are speculative. McClure's bare, anecdotal opinions are not supported by any methodology; they are conclusory statements that simply sound in attorney-argument. This Court should exclude his testimony.

Specifically McClure offers the following "opinions" in his expert report which were discussed at his deposition: (1) Plaintiff's diminished swimming performance was not caused by overtraining; (2) Plaintiff's simultaneous participation in other sports outside swimming did not cause her diminished swimming performance; (3) Plaintiff's joint pain complaints were not caused by her participation in competitive swimming; and (4) Plaintiff would have continued to improve as a competitive swimmer but for the administration of the antibiotic medication at issue. [*See* Ex. 1, McClure Report].

This Court should exclude McClure's expert testimony because he fails to satisfy any of the requirements under *Daubert* and the Federal Rules of Evidence.

### A.   McClure is unqualified to render his opinions.

McClure is unqualified to render his various opinions. The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he intends to address at trial. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Ciena Inv., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 660 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)). The burden is on the party offering the expert to demonstrate that he is qualified to testify on the matters he intends to address. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

McClure is unqualified to competently testify on the matters that he intends to address. As set forth above, McClure intends to testify regarding the extent of Plaintiff's sports training, her joint health, swimming performance, and future swimming potential. Despite McClure's

claim to be a "swim coaching expert," that is not a catch-all qualification to allow him to testify for Plaintiff in this alleged medical negligence case. McClure has no training or experience in sports training, human physiology, medicine, physical therapy, and only possesses basic mandatory coaching certification. McClure is unqualified to render his "expert" opinions. At his deposition McClure testified that he believes he is an expert merely because he has given a few presentations at coaching conferences, has coached for several years, and because other coaches respect his opinions. [McClure Depo., Exhibit 2, p. 59:6 – 64:8 and 65:10 – 67:4]. None of McClure's background, experience, and other coaches' views about his opinions qualifies him to provide expert opinions as he has done in this case.

Furthermore, McClure offers opinions regarding Plaintiff's joint health, but testified that he has no medical training. At his deposition, when questioned about his "Opinion on Joint Health," he conceded that it is not really an opinion, but merely "observations" about Plaintiff. and that he really only has "observations" not opinions regarding Plaintiff's joint health. [Ex. 2 p. 115:4-13].

      B.    <u>McClure's opinions are unreliable because they are not unsupported by any methodology.</u>

McClure's expert testimony lacks any discernible methodology. The Federal Rules of Evidence "assigned to the trial judge the task of ensuring that an expert's testimony both rest on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. This involves assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id*. at 592. The Supreme Court has suggested that trial courts consider four nonexclusive factors in making this assessment: (1) whether the theory is scientific knowledge which can and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error and the existence of standards controlling the

technique's operation; and (4) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community. *See Daubert*, 509 U.S. at 593-94. A "very significant fact" is whether McClure has "developed [his] opinions expressly for purposes of testifying," since "a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Daubert*, 43 F.3d at 1311.

For experts like McClure, experience standing alone is not "a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261. "The trial court's gatekeeper function requires more than simply 'taking the expert's word for it.'" *Id*. "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practicable purposes, subsumed by the qualification prong." *Id*.

McClure opines that Plaintiff was not over trained, but that opinion is based solely on information told to him by Plaintiff and Plaintiff's mother without any independent verification of that information. Specifically, he testified that his opinions about Plaintiff's training are based solely upon information told to him by Plaintiff's mother and are not based upon any of his independent first had observations or verification. [Ex. 2 p. 112:22 – 114:21].

The law in this Circuit and others clearly holds that an expert's opinion is unreliable where they did not independently verify the data or information supplied to them, especially by a party. *See, e.g., United Fire & Cas. Co. v. Whirlpool Corp.*, 2011 U.S. Dist. Lexis 106595 (N.D. Fla. 2011) (finding expert's testimony unreliable because it "appear[ed] to be based solely on opinions that have not been substantiated"); *McCorvey v. Baxter Healthcare Corp.*, 2010 U.S. Dist. Lexis 103298, at *17 (S.D. Fla. 2010) ("A district court properly excludes expert testimony where the expert conducted no independent research and the causation opinion rendered is only a

hypothesis which the expert has yet to attempt to verify or disprove by subjecting it to the rigors of scientific testing."); *Black & Decker v. Bosch Tools*, No. 04 C 7955, 2006 WL 5156873, *1 (N.D. Ill. Sept. 8, 2006); *Fail–Safe, L.L.C.,* 744 F. Supp. 2d at 888; *Braun Corp. v. Vantage Mobility Int'l, LLC,* No. 2:06–CV–50–JVB–PRC, 2010 WL 5287484, at *7 (N.D. Ind. June 21, 2010), *report & recommendation adopted,* 2010 WL 5279974 (N.D. Ind. Dec. 17, 2010); *Lyman,* 580 F.Supp.2d at 726; *see also Montgomery Cnty. v. Microvote Corp.,* 320 F.3d 440, 448 (3d Cir. 2003).

McClure also rendered opinions about Plaintiff's performance and regression and future prospects as a swimmer. However, at his deposition he conceded that there is no way to tell how well (or poorly) an athlete will perform in the future. Consequently, his opinions about Plaintiff's future prospects are purely speculative. [Ex. 2 74:12 – 75:23 and 78:13 – 79:8]. It is axiomatic that speculative expert testimony is inadmissible. *See McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir.2002) ("In applying the gatekeeping function, courts must "ensure that speculative , unreliable expert testimony does not reach the jury."); *Tyger Constr. Co., Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and not supported by the record.")

    C.    <u>McClure's opinions will not assist the trier of fact.</u>

McClure's expert testimony is likewise unhelpful to the trier of fact in this case. "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. . . . Proffered expert testimony generally will not assist the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63. To this end, "while an expert may testify as to his opinions on an ultimate

issue of fact, [ ] he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler*, 49 F. Supp. 3d at 1122 (quoting *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009)). "Such expert opinion is not helpful and the risk is too great that the trier of fact will be confused or place undue weight on such an opinion." *Id*. at 1124.

McClure's opinions are as unhelpful as they are unreliable. They are essentially just lay fact observations not based on any reliable methodology or data/information. McClure's opinions would also be unhelpful to a jury because he does not even remotely possess the qualifications to render expert opinions. The opinions set forth in his expert report and deposition testimony are observations a jury is just as qualified to make without McClure's proposed expert testimony.

    2.    <u>This Court Should Strike Dr. Venter's Opinions</u>

Plaintiff disclosed a treating functional medicine doctor, Jan Venter, who provided a single page report purportedly setting forth his opinions. [*See* Dr. Venter's Expert Disclosures, attached as Exhibit 3]. Dr. Venter's expert report fails to satisfy the requirements of Rule 26(a)(2)(B) and should be stricken. Dr. Venter fails to set forth (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; and (iii) any exhibits that will be used to summarize or support them. His expert report is deficient under Rule 26.

Further, Dr. Venter's opinions regarding the cause of Plaintiff's symptoms, the effects of the antibiotic at issue in this case, and the treatment and duration of any alleged symptoms and prognosis must be excluded because he is unqualified to render such opinions.

    A.    <u>Dr. Venter should be stricken as an expert for rendering a deficient report pursuant to Rule 26.</u>

Dr. Venter's one-page report is deficient under the Federal Rules of Civil Procedure. Rule 26(a)(2)(B) requires that an expert report contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; and (ii) the facts or data considered by the witness in forming them. Dr. Venter's single-page report lacks even this most basic information. He provides no analysis or explanation about the bases nor how he arrived at the opinions in his one-page report, making his opinions and report facially deficient.

Additionally, without these key elements of Dr. Venter's report, Norwegian has been prejudiced in its preparation for his deposition cross-examination, for depositions of Plaintiffs' other experts, and for trial. The expert disclosure requirement under Fed. R. Civ. P. 26(a)(2)(B) "is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, (11th Cir. 2008). An expert report must be so complete that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *In re Fla. Cement & Concrete Antitrust Litig.*, No. 09-23493-CIV-ALTONAGA/Bandstra, 2011 WL 13174537, *3 (S.D. Fla. Nov. 17, 2011) (citing and quoting *Dyett v. N. Broward Hosp. Dist.*, No. 03–60804–CIV, 2004 WL 5320630 (S.D. Fla. Jan. 21, 2004)); *see also Heed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996).

Dr. Venter should be stricken for failing to comply with the disclosure requirements set forth under Rule 2626(a)(2)(B).

        B.    <u>Dr. Venter's opinions regarding the effects of the antibiotic at issue in this case and the treatment and duration of any alleged symptoms and prognosis should be stricken because he is unqualified to render such opinions.</u>

Dr. Venter is unqualified to opine regarding the effects of the antibiotic at issue in this case and the treatment and duration of any alleged symptoms and Plaintiff's prognosis. While there is "no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field[,] . . . [i]n all cases the court must focus its inquiry on whether the expert has the requisite skill, experience, training, and education to offer the testimony he intends to introduce." *Santos v. Posadas De Puerto Rico Assocs.*, 452 F.3d 59, 63 (1st Cir. 2006); *Clarke v. Schofield*, 632 F. Supp. 2d 1350, 1354 (M.D. Ga. 2009).

Dr. Venter fails this most basic *Daubert* command. He testified at his deposition that he has only ever treated one other potential case of alleged fluoroquinolone toxicity, which involved a different antibiotic than the one at issue here.[3] Plaintiff is only the second patient he has ever treated for an alleged fluoroquinolone toxicity. It is patent that Dr. Venter is unqualified to render opinions regarding alleged fluoroquinolone toxicity, as this case would be only his second time ever even seeing a patient with a suspected adverse reaction to fluoroquinolone antibiotics. Dr. Venter is not an expert in this field.

    3.    <u>This Court Should Strike  Dr. Golomb's Opinions as the product of an Unreliable Methodology</u>

Plaintiff disclosed a researcher and family medicine doctor, Beatrice Golomb, who provided a report setting forth her opinions that the antibiotic administered in the case caused Plaintiff's alleged symptoms. [*See* Dr. Golomb's Expert Disclosures, attached as Exhibit 4]. Dr. Golomb based her opinions in large part on the history provided by Plaintiff's mother as well as a paper that she authored reporting on four individuals who participated in a research survey that she oversaw involving individuals who claimed to have suffered adverse effects from the same

---

[3] Dr. Venter's deposition took place on April 23, 2019, and the undersigned has not yet received his deposition. The undersigned will file his deposition transcript in support of this motion as soon as it is received.

class of antibiotic at issue here. [*See* Ex. 4].[4] At her deposition, Dr. Golomb admitted that she relied entirely on Plaintiff's mother's recounting of her daughter's alleged symptoms for purposes of her own report finding. Dr. Golomb did not meet with Plaintiff, did not examine her, and never even spoke to her. Dr. Golomb further admitted that Plaintiff's mother reached out to her personally, likely after finding the case study she had authored setting forth symptoms of fluoroquinolone adverse reactions based on the patient surveys she had previously conducted. Dr. Golomb's opinions are unreliable and should be stricken.

The Federal Rules of Evidence "assigned to the trial judge the task of ensuring that an expert's testimony both rest on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. This involves assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id*. at 592. The Supreme Court has suggested that trial courts consider four non-exclusive factors in making this assessment: (1) whether the theory is scientific knowledge which can and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error and the existence of standards controlling the technique's operation; and (4) the extent to which the methodology or technique employed by the expert is generally accepted in the scientific community. *See Daubert*, 509 U.S. at 593-594. A "very significant fact" is whether the expert has "developed [her] opinions expressly for purposes of testifying," since "a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Daubert*, 43 F.3d at 1311.

---

[4] Dr. Golomb confirmed this at her deposition, which took place earlier today, April 24, 2019, due to her prior refusal to proceed with a duly noticed deposition over a month ago. She refused to proceed with that deposition based on the court reporter's need to use her electronic transcription equipment to record the testimony. The undersigned will file her deposition transcript in support of this motion as soon as it is received.

Dr. Golomb's testimony is unreliable as it fails to demonstrate compliance with any of the above factors that district courts should consider. For instance, Dr. Golomb did not speak with Plaintiff personally and never even examined her. Dr. Golomb did not perform any objective testing (nor any testing at all) on Plaintiff to rule out alternative causes of her alleged symptoms (as reported by her mother) or to confirm that the antibiotic at issue played any role here. Instead, Dr. Golomb testified that she relied on Plaintiff's mother's recounting of her daughter's symptoms and history and assumed all of Plaintiff's mother's representations to be true for purposes of her report and opinions in this matter. She confirmed that Plaintiff's mother had probably read her article reporting on symptoms of other case studies involving alleged fluoroquinolone adverse reactions before contacting her; but apparently even that did not encourage her to conduct any form of investigation of her own into Plaintiff's alleged symptomology.

But this Court and Carnival should not be required to "take the expert's word for it." *Cooper v. Marten Transport, Ltd.*, 539 F. App'x 963, 966 (11th Cir. 2013). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only be the *ipse dixit* of the expert." *Id.* (citing *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183 (11th Cir. 2010) (emphasis in original)).

This Court would not be the first to strike Dr. Golomb's speculative, unreliable opinions regarding a medication. In *Latiolais v. Merck & Co., Inc.*, No. CV06-02208MRPJTLX, 2007 WL 5861354, at *4 (C.D. Cal. Feb. 6, 2007), *aff'd*, 302 Fed. Appx. 756 (9th Cir. 2008), the court found Dr. Golomb's opinions on causation regarding a drug named Zocor to be "highly speculative . . . . [and] unsupported by reliable scientific evidence or the facts in [that] case." Similar to this case, in *Latiolais* Dr. Golomb also "performed no independent factual

investigation as to [plaintiff's] medical condition or treatment . . . relying solely on a statement from Plaintiff concerning [her] condition." *Id*.

This Court should strike Dr. Golomb's opinions in this matter as unreliable and speculative.

    4.    <u>This Court Should Strike Certain Opinions offered by Dr. Bird</u>

Plaintiff disclosed an Emergency Medicine physician, Steven Bird, who provided a report setting forth his opinions that the antibiotic administered in the case caused Plaintiff's alleged symptoms. [*See* Dr. Bird's's Expert Disclosures, attached as Exhibit 5]. At his deposition, Dr. Bird set forth several new, previously undisclosed opinions regarding the treatment of other patients onboard Norwegian ships by other doctors using similar antibiotics to the one administered to Plaintiff. [*See, e.g.,* Depo. of Dr. Bird, Exhibit 6, p. 107:10 – 112:21]. Dr. Bird confirmed at his deposition that he did not provide any of these opinions regarding other cases of patients treated by other doctors in his expert report. [Ex. 6, p. 255:19 – 258:4].

For the same reasons set forth above in the discussion regarding Dr. Venter's failure to follow the disclosure requirements of Rule 26, all of Dr. Bird's previously undisclosed opinions must be stricken as well.

    5.    <u>This Court Should Strike Dr. Wahba</u>

On March 25, 2019, 28 days after the close of expert discovery under this Court's trial order [D.E. 49], Plaintiff served a supplemental expert disclosure identifying, for the first time in this lawsuit, Dr. Wahba as an expert witness. [*See* Plaintiff's Second Supplemental Expert Disclosure, attached as Exhibit 7]. Plaintiff's disclosure was untimely, and this Court must strike Dr. Wahba as an expert witness in this matter. Unless this Court strikes Dr. Wahba, Norwegian will be unfairly prejudiced.

CASE NO.: 17-CV-24404-MORENO/LOUIS

WHEREFORE, Norwegian respectfully requests that this Court strike Plaintiff's experts Christopher McClure, Dr. Jan Venter, Dr. Beatrice Golomb, Dr. Steven Bird, and Dr. Wagdy Wahba as set forth above, and grant any further relief deemed appropriate under the circumstances.

### Local Rule 7.1 Certification

I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion but has been unable to do so.

MASE MEBANE & BRIGGS, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080

By: /s/ *Victor J. Pelaez*
THOMAS A. BRIGGS
Florida Bar No. 663034
tbriggs@maselaw.com
rcoakley@maselaw.com
filing@maselaw.com
VICTOR J. PELAEZ
Florida Bar No.: 78359
vpelaez@maselaw.com
filing@maselaw.com
ctoth@maselaw.com

CASE NO.:  17-CV-24404-MORENO/LOUIS

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 24, 2019, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      /s/ *Victor J. Pelaez*

## **SERVICE LIST**

Mason Kerns, Esq.
mason@masonkernslaw.com
pleadings@masonkernslaw.com
Jeremy Block, Esq.
jeremy@masonkernslaw.com
MASON KERNS LAW, P.A.
1814 Southwest 22nd Avenue, Suite 6
Miami, Florida 33145
Tel: 305.725.8300
Fax: 305.422.0400

Heather A. McCarthy, Esq.
Heather@SD1law.pro
214 Main Street
Hobart, Indiana 46342

19305/#1003